IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-013

Filing Date: May 1, 2014

Docket No. 33,950

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES OLIVER REESE,

      Defendant-Appellant.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**
**Mary Beck Briscoe, Paul J. Kelly, Jr., and Neil M. Gorsuch, Circuit Judges**

Law Office of Monnica L. Garcia, LLC
Monnica L. Garcia
Albuquerque, NM

Paul Kennedy & Associates
Paul John Kennedy
Justine C. Fox-Young
Albuquerque, NM

Robert Jason Bowles
Albuquerque, NM

Marchiondo Law Offices, P.C.
William C. Marchiondo
Albuquerque, NM

Louis I. Cole, P.C.
Louis I. Cole
Dallas, TX

for Appellant

Office of the U.S. Attorney
Jennifer M. Rozzoni
Laura Fashing
Albuquerque, NM

for Appellee

Trace L. Rabern
Santa Fe, NM

for Amicus Curiae
New Mexico Criminal Defense Lawyers Association

## OPINION

**BOSSON, Justice.**

**{1}** The United States Court of Appeals for the Tenth Circuit certified the following question to this Court pursuant to 10th Cir. Rule 27.1:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Stat. Ann. § 31-13-1(E), or is that person's right to hold office automatically restored by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

*United States v. Reese*, 505 F. App'x. 733, 735 (10th Cir. Dec. 11, 2012) (non-precedential). *See* Rule 12-607(A)(1) NMRA (authorizing the Supreme Court to answer by formal written opinion questions certified by a court of the United States). In answering this question, we hold that upon the satisfactory completion of all conditions for a deferred sentence and the resulting dismissal of all charges, New Mexico restores a person's civil rights, including the right to hold public office, by operation of law without the necessity of a pardon or certificate from the governor.

## BACKGROUND

**{2}** The factual background in this opinion is based on the limited facts provided in the briefs and the record sent to this Court with the Tenth Circuit's certified question.

**{3}** In 1992, James Oliver Reese entered a no contest plea in New Mexico district court to one felony count of tampering with evidence. Reese's felony tampering charge was connected to two charges of aggravated assault—one involving a handgun and the other a knife. He was charged with tampering for hiding the knife. As a result of the plea, the state

2

dismissed both aggravated assault charges, leaving only the charge of tampering with evidence.

**{4}**     The district court deferred sentencing and placed Reese on probation for a period of eighteen months. *See* NMSA 1978, § 31-20-6 (1988, amended 2007) (providing conditions of an order deferring sentence, which may include the "supervision, guidance or direction of the adult probation . . . division" under Subsection C). Reese successfully satisfied the conditions of his deferment, and thereafter the district court duly entered an order that Reese was "relieved of any obligations . . . and [had] satisfied his . . . criminal liability for the crime," and that the charge of tampering with evidence was dismissed. *See* NMSA 1978, § 31-20-9 (1977) (providing the result of completing a deferred sentence, including "a dismissal of the criminal charge").

**{5}**     More than a decade later, a maelstrom of domestic strife involving Reese, his ex-wife, and his current wife brought about Reese's current legal predicament. At the end of June 2009, agents from the federal Bureau of Alcohol, Tobacco, and Firearms (ATF) obtained warrants to search Reese's residence as well as his vehicle and business for firearms. ATF agents executed the warrants and seized thirty-three firearms plus ammunition; thirty-two of the firearms were operational.

**{6}**     On May 11, 2011, a federal grand jury issued a twenty-four-count indictment arising from the procurement and possession of those firearms.[1] Most of the charges were eventually dismissed. Three counts of the indictment were brought under the federal statute prohibiting felons from possessing firearms. *See* § 922(g)(1) (prohibiting a felon from possessing a firearm or ammunition). Reese's felon-in-possession charges were all predicated on his 1992 New Mexico felony conviction for tampering with evidence, which the state court had dismissed years before. Reese moved the federal district court to dismiss the three federal felon-in-possession charges, but the court denied the motion.

**{7}**     On September 23, 2011, Reese entered into a conditional plea agreement with the federal prosecutor and pled guilty to one count of being a felon in possession of firearm. As part of the plea agreement, the other twenty-three charges were dismissed, and Reese was

---

[1]Of the twenty-four counts, nine counts of the indictment were brought under 18 U.S.C. §§ 2 (2012), 922(a)(6) (2012) and 922(a)(2) (2012) (prohibiting a person from making false statements, or aiding and abetting the making of false statements, in acquiring, or attempting to acquire, a firearm); nine counts of the indictment were brought under §§ 2 and 924(a)(1)(A) (prohibiting a person from aiding and abetting the making of false statements with respect to information required to be kept by a federal firearms licensee); three counts of the indictment were brought under §§ 922(g)(8) and 924(a)(2) (prohibiting the possession of firearms by a person subject to a restraining order); and three counts of the indictment were brought under §§ 922(g)(1) and 924(a)(2) (prohibiting a felon from possessing a firearm or ammunition).

3

permitted to appeal the denial of his motion to dismiss.

**{8}** On appeal to the Tenth Circuit Court of Appeals, Reese asserted that, because of his deferred sentence and the eventual dismissal of his state tampering-with-evidence charge, New Mexico no longer considered him a felon. Since his only prior felony conviction was under New Mexico law, Reese argued that he should not be considered a felon under federal law for purposes of the federal felon-in-possession-of-a-firearm statute. Accordingly, Reese maintained that when the federal district court refused to dismiss the federal charge, it was operating under a faulty premise which he asked the Tenth Circuit to correct. We briefly examine that argument to clarify our role in answering the question certified to us by the Tenth Circuit.

**{9}** Federal law prohibits convicted felons from possessing firearms or ammunition:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

§ 922(g)(1).

**{10}** As stated, the federal crime of being a felon in possession of a firearm extends to any person "convicted in any court," including state court, of an earlier felony. However, the federal definition of a felony or "crime punishable by imprisonment for a term exceeding one year" explicitly *excludes* any conviction for which a person has been pardoned or has had civil rights restored:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored shall not be considered a conviction* for purposes of [§ 922(g)(1)], unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (2012) (emphasis added).

**{11}** If the conviction occurred in *state court*, then federal law considers the civil rights of convicted felons "restored" when, under *state law*, they have regained four basic civil rights: (1) the right to vote, (2) the right to hold public office, (3) the right to serve on a jury,

4

and (4) the right to possess firearms.[2] *United States v. Maines*, 20 F.3d 1102, 1104 (10th Cir. 1994); *see also United States v. Flower*, 29 F.3d 530, 536 (10th Cir. 1994) (holding that not less than the four *Maines* rights must be restored). As such, if New Mexico has restored all four *Maines* civil rights to Reese, then federal law does not consider him a felon for purposes of the felon-in-possession statute. *See* § 921(a)(20) ("What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."); *see also Beecham v. United States*, 511 U.S. 368 (1994) (interpreting the choice-of-law clause in § 921(a)(20)).

**{12}**     At the Tenth Circuit, the parties agreed that New Mexico had restored Reese's rights to vote, to serve on a jury, and to possess firearms. *Reese*, 505 Fed. App'x. at 736; *see also* NMSA 1978, § 38-5-1(B) (2006) (restoring the right to serve on a jury); NMSA 1978, § 31-13-1(A)(1) (2005) (restoring the right to vote); NMSA 1978, § 30-7-16(C)(2)(c) (2001) (restoring the right to possess a firearm). The parties disagreed, however, over whether New Mexico had restored Reese's fourth civil right, the right to hold public office. *Reese*, 505 Fed. App'x. at 736.

**{13}**     Because it was "a close question with persuasive arguments on both sides" that potentially implicated the New Mexico Constitution, the Tenth Circuit certified the question to this Court. *Id.* at 734-36; *see also* Rule 12-607(A)(1) NMRA ("The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States . . . ."). We accepted certification and appreciate the opportunity to answer this significant question of state law.

**DISCUSSION**

**{14}**     The Tenth Circuit's concern arises from the New Mexico Constitution, which appears to link the right to hold office with the right to vote. Article VII, Section 2 of the New Mexico Constitution, provides that "[e]very citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this constitution." Article VII, Section 1, of the New Mexico Constitution provides for the right to vote:

---

[2]Civil rights are "[t]he individual rights of personal liberty guaranteed by the Bill of Rights and by the 13th, 14th, 15th, and 19th Amendments [of the United States Constitution], as well as by legislation such as the Voting Rights Act." *Black's Law Dictionary* 281 (9th ed. 2009). The right to vote and the right to hold public office are civil rights, but they are also discussed as political rights. At issue in this appeal are Reese's political rights. *See id.* 1437 (9th ed. 2009) (defining political right as "[t]he right to participate in the establishment or administration of government, such as the right to vote or the right to hold public office"). Thus, the four *Maines* rights are all civil rights, but two of the rights are also sometimes discussed as political rights.

5

Every citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, *except* idiots, insane persons and persons convicted of a *felonious* or infamous crime *unless restored to political rights*, shall be qualified to vote at all elections for public officers (emphasis added).

At first blush, the Constitution might appear to disqualify Reese from voting and thus from holding office because he was convicted of a felonious crime in 1992. However, the next qualifying phrase, "unless restored to political rights," allows a felon's disqualification to be reversed.

**{15}** Historically, political rights were restored by executive clemency. *See* N.M. Const. art. V, § 6 (providing for executive pardons "after conviction for all offenses except treason"). However, the New Mexico Legislature also established a mechanism whereby a felon's voting rights may be restored automatically without going to the governor for a pardon or a restoration of political rights. *See* § 31-13-1 (providing for the restoration of voting rights after a felony conviction). Section 31-13-1(A)(1) provides that "[a] person who has been convicted of a felony shall not be permitted to vote in any statewide, county, municipal or district election . . . unless the person . . . has completed the terms of a suspended or *deferred* sentence imposed by a court" (emphasis added). On its face then, Section 31-13-1(A)(1) restores the right to vote to convicted felons like Reese who have satisfied the conditions of a deferred sentence. However, Section 31-13-1(A) makes no reference to holding public office.

**{16}** Further, Section 31-13-1(E), which addresses the restoration of the right to hold public office, does not refer to a deferred sentence; it provides only for a pardon or other action by the governor:

A person who has been convicted of a felony shall not be permitted to *hold an office of public trust* for the State, a county, a municipality or a district, *unless* the person has presented the governor with a certificate verifying the *completion of the sentence* and was *granted a pardon* or a certificate by the governor restoring the person's full rights of citizenship (emphasis added).

It would appear, therefore, that by operation of law the Legislature has restored Reese's right to vote, but its intentions with regard to the right to hold public office are not so clear. The Tenth Circuit's concern is that any interpretation of the statute restoring Reese's right to vote but not his right to hold public office might run afoul of Article VII, Section 2 of the New Mexico Constitution, which arguably allows all persons with the right to vote also to hold public office. *See id.* ("Every citizen . . . [who] is a qualified elector . . . shall be qualified to hold any elective public office . . . .").

**{17}** Thus, the Tenth Circuit certified its question to this Court, which we repeat here for

6

purposes of clarity:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Stat. Ann. § 31-13-1(E), or is that person's right to hold office automatically restored by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

*Reese*, 505 Fed. App'x. at 735.

{18}    Although directed to a matter of state constitutional law, we believe that this is first a question of statutory interpretation that requires us to explore the meaning of the deferred sentencing scheme under New Mexico law. Accordingly, we direct our attention to Section 31-13-1 (E), which allows the governor to restore the right to hold public office but only upon completion of a criminal sentence. Was this language intended to bar a person like Reese, whose felony conviction was followed by a deferred sentence and ultimately by a complete dismissal of the criminal charge but who has never completed a sentence, from receiving a pardon? Stated another way, does Section 31-13-1(E) and its reference to a governor's pardon even apply to Reese or anyone else who has completed a deferred sentence? Or, does Section 31-13-1(E) only address the restoration of the right to hold public office for those who have actually served a criminal sentence? Finally, if Section 31-13-1(E) does not apply to one who receives a deferred sentence, how may the right to hold public office be restored after the conditions of a deferred sentence have been met? Before we consider any constitutional implications, we analyze whether Section 31-13-1(E) applies in the first instance to a deferred sentence.

**Under New Mexico Law, a Dismissal Order Following the Completion of a Deferred Sentence Is Effectively a Legislatively Created Judicial Pardon**

{19}    Our guiding principle when we construe statutes is that we should determine and effectuate the Legislature's intent in enacting the statute. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047. Often when courts engage in statutory interpretation, a statement of this goal is followed by the apparently obligatory statement of the plain meaning rule—"the plain language of the statute [is] the primary indicator of legislative intent." *Id.* (internal quotation marks and citation omitted). "But courts must exercise caution in applying the plain meaning rule." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352.

> While . . . one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to

7

genuine uncertainty as to what the legislature was trying to accomplish.

*Id.*

**{20}** Regarding this tension between giving words their plain meaning and giving words the meaning intended by the thoughts which gave rise to their writing, this Court, quoting Judge Learned Hand, has observed:

> There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis . . . . As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

*Id.* ¶ 26 (internal quotation marks and citation omitted).

**{21}** With these principles in mind, if we were to read only the text of Section 31-13-1(E), coupling restoration of the right to hold public office with a gubernatorial pardon, we would fall short in our responsibilities. Thus, we turn first to the history and evolution of deferred sentencing in New Mexico seen in the context of the history of Section 31-13-1.

**{22}** We find no evidence of statutory provisions for deferred sentences in New Mexico prior to 1963. *See* NMSA 1941, §§ 42-1701 to -1711 (1941) (providing for sentencing, pardons, and parole). It appears that the trial court imposed a sentence upon every person convicted of a felony and either ordered confinement in the penitentiary or imposed the sentence but held it in abeyance (suspension), as long as that person obeyed the terms and conditions of the suspension. *See* NMSA 1941, § 42-1701 (1941).

**{23}** Also before 1963, New Mexico statutes did not provide for a restoration of civil rights without first completing the sentence imposed and then securing a gubernatorial pardon:

> If any convict shall pass the entire period *of his sentence* without any violation of the rules and regulations of the penitentiary, he shall be entitled to a certificate thereof by the superintendent, endorsed by the board of penitentiary commissioners, and on presenting the same to the governor he may be granted a pardon and restored to citizenship, either at said time or subsequently, but the governor shall not be obliged to grant such pardon.

NMSA 1941, § 42-1711 (1941) (emphasis added). Before 1963, therefore, executive clemency was the only pathway to restoring civil rights, and a prerequisite to that act of clemency was the completion of a criminal sentence.

**{24}** In 1963, the Legislature provided a new sentencing option to the courts of New Mexico—deferred sentencing:

> Upon entry of a judgment of conviction of any crime not constituting a capital or first degree felony, any court having jurisdiction when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may . . . enter an order *deferring the imposition of [a] sentence*.

NMSA 1953, § 40A-29-15(A) (1963) (emphasis added). Thus, for less serious felonies, the Legislature provided courts with an option, one which took place after plea or conviction but *before* any sentence was imposed. Deferment, if successfully completed, would result in no actual sentence being imposed and ultimately in a dismissal of the charges. NMSA 1953, § 40A-29-22 (1963) ("Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has *satisfied his criminal liability* for the crime, the court *shall* enter a *dismissal* of the criminal charges." (emphasis added)).

**{25}** Although both statutes have since been recodified, their language has not changed substantively since 1963. *Compare* §40A-29-22 (1963), *with* NMSA 1978, § 31-20-9 (1977); *compare* § 40A-29-15(A) (1963), *with* NMSA 1978, § 31-20-3(B) (1985). If a sentence is never imposed and the charges are then dismissed, then logically it would appear that civil rights, suspended during the period of deferment, would be restored automatically by operation of law without the intervention of the governor.

**{26}** In 1963, the same year the Legislature enacted the deferred sentencing statute, it also altered the restoration of citizenship statute, the former NMSA 1941, Section 42-1711 (1941) and the predecessor of Section 31-13-1:

> Any person who has been convicted of a felony shall not be permitted to *vote* in any election held pursuant to the laws of the state or any subdivision thereof, nor shall such person be permitted to hold any *office* of public trust for the state or any subdivision thereof. . . . The disability imposed by this section may only be removed by the governor. *Upon presentation to the governor of a certificate evidencing the completion of an individual's sentence*, the governor may, in his discretion, grant to such individual a pardon or a certificate restoring such person to full rights of citizenship.

NMSA 1953, § 40A-29-14(A), (C) (1963) (emphasis added). This statute, linking restoration of the right to vote and the right to hold public office, remained essentially unchanged until 2001. We will discuss those amendments later in this section. Significantly, the restoration of civil rights under this statute could only be accomplished, as before, by "completion of an individual's sentence" followed by the governor's pardon. NMSA 1953, § 40A-29-14(C) (1963).

9

**{27}** The question is whether this statutory mechanism for the restoration of civil rights was intended to include those who received a deferred sentence, or if it was only intended to apply to those who actually received and completed a criminal sentence. Put more directly, how could an individual whose sentence is deferred and never imposed, and whose charges are ultimately dismissed, ever obtain "a certificate verifying the completion of [his] sentence" and become eligible for a governor's pardon? *See* § 31-13-1(E). If we read the statute literally, then a sentence never imposed could never be pardoned nor civil rights restored, an obvious absurdity.

**{28}** As such, under that literal reading, those receiving and complying with any terms of a deferred sentence would be placed in a worse position than those receiving and completing long sentences in the penitentiary. Such an unnatural consequence strongly suggests that the restoration of civil rights under § 31-13-1(E) was never intended to apply to deferred sentences, because it was not necessary; restoration occurred by operation of law upon satisfactory completion of the conditions of deferment and dismissal of the criminal charges. Thus, from the very beginning there appear to have been at least two pathways to restoring civil rights: the predecessor of Section 31-13-1 for those who received and completed criminal *sentences*, and the predecessor of Section 31-20-9 for those who received deferred sentences and had no sentences to complete. Fortunately, we need not rely just on our own statutory analysis, for this is not the first time this question has arisen.

**{29}** The state's jurisprudence after 1963, limited though it may be, reflects a similar rationale for these two pathways to the restoration of civil rights. This Court stated almost fifty years ago, at the time deferred sentencing first appeared in our law, that "deferment of sentence . . . is an act of [judicial] clemency." *State v. Serrano*, 1966-NMSC-166, ¶ 3, 76 N.M. 655, 417 P.2d 795. The general purpose of deferred sentencing assumes that the public interest and the interest of a defendant are best served where the court believes it is possible and preferable to rehabilitate the defendant without imposing a sentence. *See id.* ¶ 2 (discussing the provisions for deferring or suspending a sentence); *see also* § 31-20-3(A). The Legislature intended to give courts the authority to defer sentencing if, in the court's opinion, the defendant could be rehabilitated without imposing punishment. If this proved the case, the court could reinstate the defendant to civic life with the same rights and privileges as if the conviction had never occurred. The decision whether to defer a sentence is within the sound discretion of the district court. *See id.* ¶ 3 (determining whether to defer a sentence is "committed to the discretion of the trial court"). Typically, a deferred sentence would be considered in cases where the court feels that it is more appropriate to allow the offender the opportunity to prove that his lapse in judgment was a one-time mistake and not an error indicative of a more serious, underlying issue requiring incarceration.

**{30}** In briefing this Court, Reese relies on *State v. Kenneman*, 1982-NMCA-145, 98 N.M. 794, 653 P.2d 170, *cert. denied*, 99 N.M. 47, 653 P.2d 878 (No. 14,570, Nov. 5, 1982), for evidence that historically New Mexico has always understood the lasting effects of a deferred sentence to be different from other types of sentences. *Kenneman* bases its distinction on the difference between deferring a sentence and suspending a sentence. In the

10

latter, a sentence is actually imposed; in the former, it is not. *See id.* ¶ 7-8; *see also* § 31-20-3(A)-(B) (providing that a court may defer or suspend sentences). *Kenneman* reasoned that with no sentence actually imposed upon deferment, if probation is thereafter revoked, "the court may impose any sentence which might originally have been imposed." *Id.* ¶ 7. However, with a suspended sentence, since a sentence is actually imposed, if probation is thereafter revoked, the court may impose a sentence no longer than "the balance of the sentence previously imposed but suspended." *Id.* ¶ 7.

**{31}** *Kenneman* noted that upon "satisfactorily complet[ing] the terms of suspension, [the defendant] . . . may be eligible for pardon," but upon "satisfactorily complet[ing] the period of deferment . . . the [defendant's] charges shall be dismissed." *Id.* ¶ 7. Reasoning from this difference, *Kenneman* stated, "[s]uspension always subjects the defendant to criminal consequences, although he may be pardoned, while deferral ordinarily results in the charges being dismissed." *Id.* ¶ 8. By extension, Reese argues, once the charges are dismissed there is no longer any criminal responsibility (no "criminal liability," in the words of the 1993 district court order of dismissal), and therefore, without criminal responsibility all civil rights are automatically restored by operation of law.

**{32}** In addition to the Court of Appeals opinion in *Kenneman*, Reese directs our attention to a New Mexico Attorney General opinion and an advisory letter. *See* N.M. Att'y Gen. Op. 88-03 (1988) (citing N.M. Att'y Gen. Op. 73-44 (1973)).

**{33}** New Mexico Attorney General Opinion 73-44 analyzed the effect of a felony conviction on a person's right to vote and concluded that the effect of satisfying a deferred sentence is different from completing other sentences. *See id.* at 87. The opinion states, "[i]t is thus apparent that a person seeking restoration of [the right to vote] after a suspended sentence must go to the Governor for relief, but that a dismissal order [following a deferred sentence] is intended to restore the right to vote automatically." *Id.* This 1973 opinion also asserted that the right to vote and the right to hold public office are inextricably linked under the New Mexico Constitution and that both are understood to be automatically restored upon the completion of a deferred sentence. *See id.* at 86-87. The Attorney General noted that NMSA 1953, Section 40A-29-14 (1963) (providing for a gubernatorial pardon), the predecessor of Section 31-13-1, was understood to pertain to "persons who have served all or part of their sentences in the penitentiary," and not to those completing a deferred sentence. *See id.* at 87. Thus, a sentence served, a sentence suspended, and a sentence deferred each results in different lasting effects. *See id.* at 86-87. As far as the Attorney General was concerned, those who satisfied the conditions of deferred sentences had their civil rights restored automatically while other sentences required relief from the governor. *Id.*

**{34}** A 1985 Attorney General advisory letter addressed whether Section 30-7-16 (1981) (prohibiting felons from possessing firearms) "applies to a convicted felon who has received a deferred sentence and has successfully completed the period of deferment." N.M. Att'y Gen. Advisory Letter to David A. Lane, Sixth Judicial District Attorney, at 1 (Nov. 12,

11

1985). The advisory letter concluded that the Section 30-7-16 prohibition would not apply to persons convicted of a felony who had received and successfully completed a deferred sentence because that sentencing scheme is treated differently from other sentences. *Id.* at 2. In doing so, the advisory letter relied on both Advisory Opinion No. 73-44, *id.*, and *Kenneman*, *id.* at 1. The advisory letter focused on the distinction between (1) completing a suspended sentence, whereby "a defendant is entitled to a certificate . . . that . . . may be presented to the Governor who may . . . restor[e] full rights of citizenship," and (2) satisfying the conditions of a deferred sentence, whereby "a defendant . . . [is] restored to his rights to vote and to hold office automatically, without having to seek the governor's pardon." *Id.* 1-2.

**{35}** Finally, the 1988 Attorney General opinion addressed the question whether the successful completion of a deferred sentence automatically restored firearms privileges. N.M. Att'y Gen. Op. 88-03 (1988). Given New Mexico's historical understanding that the dismissal of charges following the successful completion of a deferred sentence equated to an automatic restoration of civil rights, the opinion concluded that firearms privileges were automatically restored. *See id.*

**{36}** We recognize that Attorney General opinions and advisory letters do not have the force of law. In this case, however, they persuasively establish what New Mexico has consistently understood the law to be with regard to deferred sentencing. *Hanagan v. Bd. of Cnty. Comm'rs of Lea Cnty.*, 1958-NMSC-053, ¶ 9, 64 N.M. 103, 325 P.2d 282 (stating that "opinions of the Attorney General are entitled to great weight," but are not binding). Since at least 1973, if not since the enactment of the first deferred sentence statute in 1963, New Mexico has understood that civil rights, including the right to hold public office, are restored automatically by operation of law upon satisfaction of the conditions of deferment and dismissal of the charges, without any action required of the governor. Thus, satisfying a deferred sentence has functioned as the judicial equivalent of a pardon. Given that the Legislature has not seen fit to provide further express guidance or correction, it is appropriate to presume that our understanding is consistent with legislative intent.

**{37}** Section 31-13-1 in the current compilation of the New Mexico Statutes was amended in 2001 and in 2005. We look to those amendments to see if the Legislature clearly signaled any change to this decades-old understanding that satisfying the conditions of a deferred sentence automatically restored civil rights.

**{38}** The 2001 amendments separated the right to vote from the right to hold office for the first time. *See* § 31-13-1 (2001). The amendments expressly provided, also for the first time, that the right to vote would be restored automatically once "the person . . . has completed the terms of a suspended or *deferred sentence* imposed by a court." *See* NMSA 1978, § 31-13-1(A) (2001) (emphasis added) (allowing felons to have the right to vote restored if certain conditions were met). As amended, however, the statute separately addressed the right to hold public office, made no mention of a deferred sentence, and limited restoration as in the 1963 statute to completing a sentence and securing a pardon. *See* § 31-13-1(C) (2001) (requiring a governor's pardon for the right to hold office to be restored). In 2005, the statute

12

was again amended, to provide procedures for restoring the right to vote. *See* § 31-13-1 (2005). The Legislature also renumbered subsection (C) as subsection (E), but the language regarding the restoration of the right to vote and the right to hold office remained largely as it had been. *Compare* § 31-13-1(C) (2001), *with* § 31-13-1(E).

**{39}**     Thus, the question arises whether the 2001 and 2005 amendments to the restoration of citizenship statute, which were the first to refer to deferred sentencing *but* only in regard to restoration of the right to vote, changed the legal landscape established over the previous three decades with respect to the legal consequences of a deferred sentence. For the reasons that follow, we conclude that they did not. Rather, Sections 31-13-1(C) (2001) and (E) (2005), referring to restoration of the right to hold public office, merely repeat what had been said for the past 40 years, namely, that any criminal sentence imposed must be completed before asking the governor for a pardon. The statute remains silent about restoration of the right to hold public office for those who do *not* receive a sentence and thus, could never submit evidence of its completion.

**{40}**     Section 31-13-1(A) (2001) expressly incorporated restoration of the right to vote by way of a deferred sentence, much as the Attorney General had stated decades earlier. In the same way, Section 31-13-1(C) (2001) also restated the status quo for the restoration of the right to hold public office for those who had been convicted of, and successfully served, an actual criminal sentence. Following the amendment of the statute in 2005, Section 31-13-1(E) continues to say nothing about restoration for those who do not serve an actual criminal sentence. In our view, therefore, the 2001 and 2005 amendments continued the dual pathways for civil rights restoration.

**{41}**     Our reading of the 2001 amendments is shared by another authority, the New Mexico Executive Clemency Guidelines published by the New Mexico governor's office. In his briefing to this Court, Reese alerted us to the 2003 version of the State of New Mexico Executive Clemency Guidelines (Rev. Aug. 20, 2003), http://www.recordgone.com/public/templates/default/pdf/New-Mexico-Pardon-Application.pdf, and published during the effective period of the 2001 amendments. The 2003 Executive Clemency Guidelines provided that "[t]he governor will not consider a case where there was a successful completion of a deferred sentence, since a dismissal order under Section 31-20-9, NMSA is intended to restore citizenship rights and the right to bear arms." *Id.* at 1. Thus, at least in 2003 there was no need to apply to the Governor for a pardon under Section 31-13-1(C) (2001), because it occurred by operation of law.

**{42}**     But, unless the Governor and the Legislature both understood that Section 31-13-1(C) (2001) did not apply to persons with a deferred sentence, their respective understanding of the law would conflict. While this is possible, we presume that the different branches of the state government interpret the law harmoniously unless otherwise demonstrated. No such demonstration has been made here. It follows that because the Legislature did not explicitly prohibit persons receiving deferred sentences from holding office, this Court should not override what appears to be the clear understanding and intent. Stated another way, deferring

13

a sentence is an act of judicial clemency while a gubernatorial pardon is an act of executive clemency; and they are the same in legal effect.

**{43}** Finally, even if we were not persuaded that this history demonstrates the Legislature's intent, we are required by the rule of lenity to interpret a criminal statute in the defendant's favor "when insurmountable ambiguity persists regarding [its] intended scope." *State v. Hall*, 2013-NMSC-001, ¶19, 294 P.3d 1235. Given the weight of history, the principle of lenity and simple common sense bind us and require that we not overrule New Mexico's historic understanding of the law. Therefore, we hold that upon the successful completion of his deferred sentence and dismissal of all State charges, Reese's civil rights, including the four *Maines* rights, were restored automatically by operation of law. And in answer to the Tenth Circuit's certified question, this included his right to hold public office.

**A Conviction That Remains on the Record After the Charges Are Dismissed Following the Completion of a Deferred Sentence Does Not Negate the Fact That a Defendant's Civil Rights Are Restored**

**{44}** The federal prosecutor also argues that a felony conviction, even with a deferred sentence, remains on the record after the charges are dismissed and, therefore, that the felony should remain a conviction for the purposes of the federal felon-in-possession statute. The prosecutor relies on two New Mexico cases, *Padilla v. State*, 1977-NMSC-063, ¶ 9, 90 N.M. 664, 568 P.2d 190, and *State v. Brothers*, 2002-NMCA-110, ¶¶ 9-11, 133 N.M. 36, 59 P.3d 1268, for the proposition that a deferred sentence is a conviction that remains a conviction because a conviction refers to a finding of guilt and does not include an imposition of a sentence. However, in order for § 922(g)(1) (prohibiting a convicted felon from possessing firearms) to be operative, it is not enough that there was a conviction at one point in the past; it must still stand as a conviction under the federal definition which excludes those who have "had [their] civil rights restored." § 921(a)(20).

**{45}** The federal prosecutor would have this Court engage in interpreting the federal statute, which we are reluctant to do. The question put to this Court by the Tenth Circuit is whether, under state law, Reese's fourth *Maines* right, the right to hold public office, had been restored. As discussed above, upon completing a deferred sentence, all civil rights are automatically restored under New Mexico law. Although we have answered the question posed to us by the Tenth Circuit, we will address briefly the reference to two state cases from our appellate courts.

**{46}** *Padilla* analyzed the effect of a previous conviction on a later habitual offender proceeding when that prior conviction resulted in a deferred sentence. *Padilla*, 1977-NMSC-063, ¶ 1. In *Padilla*, this Court was not concerned with, and did not analyze, what effect dismissing the charges might have on a defendant's civil rights after the defendant completed a deferred sentence. *See id.* The Court was primarily concerned with whether the prior felony conviction could be taken into account in a habitual offender proceeding and concluded that it did. *See id.* ¶¶ 1, 11. However, *Padilla* did acknowledge that "upon the expiration of the

deferred sentence, the defendant has satisfied his criminal liability . . . and the court must . . . dismiss[] the charge." *Id.* ¶ 8.

**{47}**     *Brothers* analyzed the effect of deferring a sentence when the conviction requires a defendant to register under the Sex Offender Registration and Notification Act (SORNA). *Brothers*, 2002-NMCA-110, ¶¶ 7-8. Our Court of Appeals reasoned that "nothing in Section 31-20-9 suggests that when a deferred sentence expires and the charges are dismissed, the conviction no longer exists." *Id.* ¶ 9. The order of dismissal said nothing about removing the conviction. *Id.* The Court of Appeals reasoned that to construe the dismissal as automatically eradicating the conviction upon the completion of a deferred sentence would render a deferred sentence effectively "identical" to a conditional discharge and render that statute meaningless. *Id.* ¶ 10 (distinguishing a "conditional discharge order[,] entered without entry of an adjudication of guilt" from a "deferred sentence[,] entered with an adjudication of guilt." (citation omitted)); *see also* NMSA 1978, § 31-20-13 (1994). However, the Court of Appeals also observed that since a conviction does not impose a sentence, it follows that criminal liability may be removed while leaving the adjudication of guilt as a mere notation in the record, which may be taken into account for other purposes. We agree with the latter conclusion of the Court of Appeals without necessarily endorsing everything about its broader characterization of our deferred sentencing statute, especially in comparison to a conditional discharge.

**{48}**     Neither *Padilla* nor *Brothers* determines how completing the terms of a deferred sentence affects a defendant's civil rights. In fact, in *Brothers,* the Court of Appeals expressly limited its holding to the effect of the conviction "for the purposes of registration under SORNA." *Brothers*, 2002-NMCA-110, ¶ 11. *Brothers* also notes that SORNA is not penal legislation; it imposes a civil duty upon a defendant to register upon conviction, for the protection of communities. *Id.* ¶¶ 19-20; *see also Hall*, 2013-NMSC-001, ¶ 17 (discussing SORNA as remedial legislation). Further, this Court has noted that the SORNA registration requirement is not punitive. *See Montoya v. Driggers*, 2014-NMSC-009, ¶ 5, 320 P.3d 987.

**{49}**     *Padilla* and *Brothers* analyzed the nonpunitive consequences of a former conviction, not the criminal liability that flowed from the former conviction or how completing a term of deferment affects a defendant's civil rights. *See Marquez v. Hatch*, 2009-NMSC-040, ¶ 12, 146 N.M. 556, 212 P.3d 1110 (discussing the habitual offender enhancement as a consequence of, but not part of, the criminal liability); *see also State v. Myers*, 2011-NMSC-028, ¶¶ 43-45, 150 N.M. 1, 256 P.3d 13 (discussing SORNA registration as a consequence of, but not part of, the criminal liability). Restoring a defendant's civil rights does not require that the record of the conviction be erased. As such, there is no conflict between the holding of *Padilla* or *Brothers* and our holding in this case.

## CONCLUSION

**{50}**     The New Mexico Legislature established the deferred sentence as a means of judicial

15

clemency. As such, dismissal of the criminal charges upon satisfaction of the conditions of deferment automatically restores a convicted felon's civil rights by operation of law. Thus, Reese's right to hold public office has been restored.

**{51}    IT IS SO ORDERED.**

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _United States of America v. Reese_, No. 33,950**

**APPEAL AND ERROR**
Certification

**CIVIL RIGHTS**
Civil Rights, General
Voting Rights

**CONSTITUTIONAL LAW**
New Mexico Constitution, General
Right to Vote

**CRIMINAL LAW**
Weapons Offences

**CRIMINAL PROCEDURE**
Deferred Sentence
Dismissal of Charges
Pardon

**FEDERAL LAW**
Federal Law, General

**GOVERNMENT**
Public Office

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction