# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-050

Filing Date: March 7, 2022

No. A-1-CA-38507

CHARLES BENNS,

      Petitioner-Respondent

v.

NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY,

      Respondent-Petitioner.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Denise Barela Shepherd, District Judge

Christin K. Kennedy
Albuquerque, NM

Justine Fox-Young, P.C.
Justine Fox-Young
Albuquerque, NM

for Respondent

Joan M. Waters, Assistant General Counsel
Santa Fe, NM

for Petitioner

## OPINION

**DUFFY, Judge.**

**{1}**    In this appeal we consider whether the New Mexico Department of Public Safety (DPS) erred in denying Petitioner Charles Benns's application for a concealed handgun license under the Concealed Handgun Carry Act (CHCA), NMSA 1978, §§ 29-19-1 to -15 (2003, as amended through 2015). DPS concluded that Benns is disqualified by statute from obtaining a concealed handgun license based on two prior convictions for which he received deferred sentences. On Benns's petition for writ of certiorari to the district court, the court reversed DPS's denial, reasoning that because Benns had

successfully completed his deferred sentences, he was not considered to have been "convicted" for purposes of the CHCA. We conclude that the term "convicted" as used in the CHCA refers to an adjudication of guilt and does not depend on the imposition of a sentence. Therefore, Benns's prior convictions disqualify him from obtaining a concealed handgun license, notwithstanding his successful completion of his deferred sentences. We reverse the district court and affirm DPS.

**BACKGROUND**

**{2}**     New Mexico's CHCA authorizes DPS to issue concealed handgun licenses to "qualified applicants." Section 29-19-3. Applicant qualifications are set out in Section 29-19-4, which first lists ten criteria that applicants must satisfy, followed by four types of past criminal conduct that disqualify an applicant. Two of these criteria are at issue here. First, Section 29-19-4(A)(5) requires that an applicant must not have been "convicted of a felony in New Mexico or any other state or pursuant to the laws of the United States or any other jurisdiction." Second, Section 29-19-4(B)(4) states that DPS shall deny a concealed handgun license to an applicant who has "been convicted of a misdemeanor offense involving assault, battery or battery against a household member." The CHCA does not define the word "convicted."

**{3}**     In 2017, Benns applied for a concealed handgun carry license. DPS denied Benns's application based on his prior misdemeanor and felony history: in 1989, Benns was convicted of misdemeanor battery against a household member and received a deferred sentence, and in 1991, Benns was charged with aggravated assault with a deadly weapon, a fourth-degree felony, to which he pleaded no contest and received a deferred sentence. *See* NMSA 1978, § 30-3-2(A) (1963). Benns successfully completed the terms of the second deferred sentence in 1994.

**{4}**     Benns requested an administrative hearing for reconsideration of the denial. DPS granted this request and, after the hearing, issued a final order denying Benns's application. Benns appealed the decision to the district court. The district court reversed DPS's denial, concluding that upon successful completion of his deferred sentences, Benns was no longer "convicted" for purposes of Sections 29-19-4(A)(5) and (B)(4). DPS filed a petition for a writ of certiorari, which we granted.

**DISCUSSION**

**{5}**     The issue in this case is whether the word "convicted" as used in the CHCA includes convictions for which a defendant has successfully completed a deferred sentence. We conclude that it does and hold that Benns's criminal history constitutes a basis for disqualification under Section 29-19-4.

**I.      Standard of Review**

**{6}**     "Upon a grant of a petition for writ of certiorari under Rule 12-505 [NMRA], this Court conducts the same review of an administrative order as the district court sitting in

its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Commc'n Workers of Am., AFL-CIO v. State*, 2019-NMCA-031, ¶ 13, 446 P.3d 1183 (internal quotation marks and citation omitted). "[W]e apply a de novo standard of review to administrative rulings regarding statutory construction." *Id.* (internal quotation marks and citation omitted).

## II. A Deferred Sentence Does Not Eliminate the Underlying Criminal Conviction for Purposes of the CHCA

**{7}** In order to understand the effect of Benns's deferred sentences in this case, we begin with a brief overview of the features of a deferred sentence. We then turn to New Mexico case law addressing how a deferred sentence may be taken into account for other purposes. As we discuss below, the characteristics that define a deferred sentence—an adjudication of guilt without the imposition of a sentence—are what ultimately inform our conclusion that the underlying conviction remains and may be taken into account for purposes of the CHCA.

**{8}** Deferments are one of three statutory sentencing options that provide an alternative to confinement. *See* NMSA 1978, § 31-20-3 (1985) (providing for deferred and suspended sentences); NMSA 1978, § 31-20-13 (1994) (providing for conditional discharge orders). "The Legislature intended to give courts the authority to defer sentencing if, in the court's opinion, the defendant could be rehabilitated without imposing punishment." *United States v. Reese*, 2014-NMSC-013, ¶ 29, 326 P.3d 454; *see id.* (stating that "[t]ypically, a deferred sentence would be considered in cases where the court feels that it is more appropriate to allow the offender the opportunity to prove that his lapse in judgment was a one-time mistake and not an error indicative of a more serious, underlying issue requiring incarceration"). Thus, for all but first degree and capital felonies, the Legislature provided that

> [*u*]*pon entry of a judgment of conviction* of any crime not constituting a capital or first degree felony, any court having jurisdiction when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may . . . enter an order *deferring the imposition of sentence*.

Section 31-20-3(A) (emphases added).

**{9}** Functionally, deferments take place after the entry of a plea or conviction but before any sentence is imposed. *See Reese*, 2014-NMSC-013, ¶ 24; *State v. Fairbanks*, 2004-NMCA-005, ¶ 10, 134 N.M. 783, 82 P.3d 954 (stating that a deferred sentencing order is entered with an adjudication of guilt). When the period and conditions of deferment are complete, the defendant "has satisfied his criminal liability for the crime, [and] the court shall enter a dismissal of the criminal charges." NMSA 1978, § 31-20-9 (1977). Thus, "[d]eferment, if successfully completed, would result in no actual sentence being imposed and ultimately in a dismissal of the charges." *Reese*, 2014-NMSC-013, ¶ 24. *But see State v. Kenneman*, 1982-NMCA-145, ¶ 7, 98 N.M. 794,

653 P.2d 170 (stating that if the defendant violates the terms of his probation, the district court may revoke the deferral and impose any sentence that might originally have been imposed).[1]

**{10}** New Mexico courts have previously concluded that even though the criminal charge is dismissed after a defendant has completed the period of deferment, the "conviction" remains. *E.g.*, *Padilla v. State*, 1977-NMSC-063, ¶ 9, 90 N.M. 664, 568 P.2d 190; *State v. Brothers*, 2002-NMCA-110, ¶ 15, 133 N.M. 36, 59 P.3d 1268. Under longstanding New Mexico precedent, a "conviction" refers to the finding of guilt by plea or by verdict and does not require the imposition of a sentence. *E.g.*, *Reese*, 2014-NMSC-013, ¶ 44; *Fairbanks*, 2004-NMCA-005, ¶ 10 (collecting cases); *see also* NMSA 1978, § 30-1-11 (1963) (stating that "[n]o person shall be convicted of a crime unless found guilty by the verdict of the jury" a guilty or no contest plea, or a finding of guilt in a bench trial). Consequently, this Court and our Supreme Court have held that while a deferred sentence may remove the criminal liability, the adjudication of guilt remains and may be taken into account for other purposes. *Reese*, 2014-NMSC-013, ¶ 47; *Brothers*, 2002-NMCA-110, ¶ 15.

**{11}** In *Padilla*, for example, our Supreme Court held that the defendant could be charged under the state's habitual offender statute based on a prior felony conviction for which he had received a deferred sentence. 1977-NMSC-063, ¶¶ 1, 11. The defendant argued that his prior conviction could not serve as the basis for a habitual offender charge because it had been dismissed after he successfully completed the deferred sentence. *Id.* ¶ 1. The Court acknowledged that "[t]here is some merit to the contention that upon dismissal of criminal charges under the deferred sentence provision . . . there has been no prior conviction." *Id.* ¶ 9. However, the Court noted that in previous cases, it had "determined that the contrary is true, holding that a 'conviction' *refers to a finding of guilt and does not include the imposition of a sentence*." *Id.* (emphasis added). The Court thus concluded that the defendant's prior conviction could be used for purposes of habitual offender proceedings because "[h]abitual offender proceedings are based by statute on prior felony convictions. Since it is not necessary to impose a sentence in order to constitute a conviction, the deferred sentence was of no consequence. It is the conviction that is crucial and not the sentence." *Id.* ¶ 11.

---

1A deferment falls between the other alternative sentencing options. A suspended sentence also involves an adjudication of guilt, but in contrast to a deferment, the court will "sentence the defendant and enter an order suspending in whole or in part the execution of the sentence[.]" Section 31-20-3(B); *see also Fairbanks*, 2004-NMCA-005, ¶ 10 (stating that for both suspended and deferred sentences there has been an adjudication of guilt); *Kenneman*, 1982-NMCA-145, ¶ 8 (stating that "the difference . . . is that suspension involves a sentence imposed while deferral does not"). A conditional discharge, on the other hand, is different from a suspended or deferred sentence "because there is no adjudication of guilt." *Fairbanks*, 2004-NMCA-005, ¶ 10; *see also id.* ¶ 8 ("[U]pon a guilty plea or verdict, the defendant is placed on probation and sentencing is deferred *without an adjudication of guilt*."); § 31-20-13(A) (stating that a court may enter a conditional discharge and place a defendant on probation "without entering an adjudication of guilt"). "[E]ven though there is a guilty plea, the successful completion of probation under the terms of a conditional discharge results in the eradication of the guilty plea or verdict and there is no conviction." *Fairbanks*, 2004-NMCA-005, ¶ 10.

**{12}** Similarly, in *Brothers*, this Court held that the defendant was required to register as a convicted sex offender under the Sex Offender Registration and Notification Act (SORNA), even though he had satisfactorily completed his deferred sentence for the underlying charge and the charge had been dismissed. 2002-NMCA-110, ¶ 15. SORNA defined a "sex offender" as "a person convicted of a sex offense on or after July 1, 1995." NMSA 1978, § 29-11A-3(A)(1) (1995, amended 2013). The defendant argued that "the expiration of his deferred sentence, satisfaction of criminal liability, dismissal of the . . . charges, and restoration of his civil rights combined to eradicate his convictions, and he therefore was no longer required to register as a sex offender." *Brothers*, 2002-NMCA-010, ¶ 8. We rejected this argument, reasoning that "[n]othing in Section 31-20-9 suggests that when a deferred sentence expires and the charges are dismissed, the conviction no longer exists." *Brothers*, 2002-NMCA-010, ¶ 9. We also noted that "if the expiration of a deferred sentence resulted in the eradication of a conviction, a deferred sentence would be no different than a conditional discharge." *Id.* ¶ 10.

**{13}** In light of these precedents, Benns's underlying convictions remain, even if he never received a sentence and the charges were ultimately dismissed. We hold that those convictions can—and must—be taken into account for purposes of the CHCA.

### III. *Reese* Does Not Support Reversing DPS's Denial of Benns's Concealed Handgun License Application

**{14}** Benns argues that *Padilla* and *Brothers* are outdated authority and that our Supreme Court's more recent decision in *Reese* is dispositive. According to Benns, *Reese* instructs that when a felony charge is dismissed following the completion of a deferred sentence, the charge can no longer be used as a predicate conviction for other purposes. However, the holding in *Reese* is not as broad as Benns suggests. As we explain, *Reese* expressly left *Padilla* and *Brothers* intact and did not alter the longstanding precept that a "conviction" is based on an adjudication of guilt.

**{15}** At issue in *Reese* was a narrow question certified by the Tenth Circuit to our Supreme Court: "If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor[?]" 2014-NMSC-013, ¶ 1 (internal quotation marks and citation omitted). The question arose after the defendant—who had successfully completed a deferred sentence for a felony conviction under New Mexico law—was federally indicted under 18 U.S.C. § 922(g)(1), which made it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess firearms. *Reese*, 2014-NMSC-013, ¶¶ 4, 6, 9. The defendant pleaded guilty to the federal felon-in-possession charge and appealed his conviction, asserting that he was no longer a felon under New Mexico state law because he successfully completed a deferred sentence for the state felony conviction and the charges had been dismissed. *Id.* ¶¶ 6, 8.

**{16}** The federal felon-in-possession statute at issue in *Reese* defined what constitutes a conviction and explicitly excluded any conviction for which a person has

had his or her civil rights restored. *Id.* ¶ 10; 18 U.S.C. § 921(a)(20) (stating that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored shall not be considered a conviction*" for purposes of § 922(g)(1) (emphasis added)). "[F]ederal law considers the civil rights of convicted felons 'restored' when, under *state law*, they have regained four basic civil rights: (1) the right to vote, (2) the right to hold public office, (3) the right to serve on a jury, and (4) the right to possess firearms." *Reese*, 2014-NMSC-013, ¶ 11. The parties agreed that the defendant's rights to vote, serve on a jury, and possess firearms had been restored but disputed whether New Mexico had restored the defendant's right to hold public office. *Id.* ¶ 12. The Tenth Circuit certified the case to our Supreme Court to resolve the question of state law. *Id.* ¶ 13.

**{17}** Reviewing the case, our Supreme Court noted that the Legislature had enacted a "restoration of citizenship" statute that provided a felon's civil rights (including the right to hold public office) would be restored upon the successful completion of an individual's sentence. *Id.* ¶ 26 (citing NMSA 1953, § 40A-29-14(A), (C) (1963) and NMSA 1978, § 31-13-1 (2005)). The Court reasoned that because the statutory mechanism for restoring civil rights was tied to the completion of a sentence, it was never meant to apply to those who received a deferred sentence (and had no sentence to complete) because it was not necessary. *Id.* ¶¶ 27-28. Instead, the Court concluded that a defendant's civil rights were restored by operation of law when the defendant successfully completed the conditions of deferment and the underlying charges were dismissed. *Id.* ¶¶ 28, 43.

**{18}** In context, *Reese* did no more than determine the effect of a deferred sentence within the framework of two statutes—a federal statute that specifically defined what constitutes a conviction, and a state statute that tied the restoration of a defendant's civil rights to a sentence imposed. *See id.* ¶¶ 44-45 (explaining that the scope of the Court's analysis was limited to whether a deferred sentence stood as a conviction under the federal definition, which depends on whether a defendant's civil rights had been restored under state law). Benns nevertheless argues that *Reese* controls here because the Court, when discussing the history and purpose of deferred sentencing in New Mexico, characterized a deferred sentence as "an act of judicial clemency" that allows a court to "reinstate the defendant to civic life with the same rights and privileges as if the conviction had never occurred." *Id.* ¶ 29 (alteration, internal quotation marks, and citation omitted). Benns concludes that a defendant who completes a deferred sentence does not forever remain "convicted" of a felony or misdemeanor. But as DPS correctly notes, the *Reese* Court specifically "recognized that restoration of an individual's civil rights following a felony conviction was an issue distinct from whether the individual remained a convicted felon."

**{19}** The *Reese* Court discussed the distinction in response to the government's argument, relying on *Padilla* and *Brothers*, "that a felony conviction, even with a deferred sentence, remains on the record after the charges are dismissed and, therefore, that the felony should remain a conviction for the purposes of the federal felon-in-possession statute." *Id.* ¶ 44. The Court ultimately concluded that *Padilla* and

*Brothers* were not relevant to the question of whether a conviction "still stand[s] as a conviction under the federal definition which excludes those who have had their civil rights restored," *id.* (alteration, internal quotation marks, and citation omitted), because "[r]estoring a defendant's civil rights does not require that the record of the conviction be erased." *Id.* ¶ 49. Importantly, the Court expressly reaffirmed the core holdings from *Padilla* and *Brothers*, stating that "since a conviction does not impose a sentence, it follows that criminal liability may be removed while leaving the adjudication of guilt as a mere notation in the record, *which may be taken into account for other purposes.*" *Id.* ¶ 47 (emphasis added).

**{20}**    Unlike *Reese*, this case does not implicate Benns's civil rights. Rather, Benns wishes to obtain a license to carry a concealed handgun—a statutory privilege. Accordingly, *Reese*'s analysis of how completing the terms of a deferred sentence affects a defendant's civil rights is not dispositive of the question before us: whether Benns's convictions are convictions that may be considered as disqualifying criteria for purposes of the CHCA. Under *Padilla* and *Brothers*, they are because they involved an adjudication of guilt. And contrary to Benns's contentions, these cases continue to control our decision here.

## IV.    A Conviction for Purposes of Section 29-19-4 Is an Adjudication of Guilt

**{21}**    Benns's final argument rests on the plain language of Section 29-19-4. He notes that in Section 29-19-4(B)(1), the Legislature specifically referred to deferments as a disqualifying condition, but failed to identify them specifically in the two subsections at issue here, Sections 29-19-4(A)(5) and (B)(4). In Benns's view, that omission was intentional.

**{22}**    Section 29-19-4 states in relevant part:

A.    The department shall issue a concealed handgun license to an applicant who:

. . . .

(5) has not been convicted of a felony in New Mexico or any other state or pursuant to the laws of the United States or any other jurisdiction;

. . . .

B.    The department shall deny a concealed handgun license to an applicant who has:

(1) received a conditional discharge, a diversion or *a deferment or has been convicted of,* pled guilty to or entered a plea of nolo contendere to a misdemeanor offense involving a crime of violence within ten years immediately preceding the application;

. . . .

        (4) been convicted of a misdemeanor offense involving assault, battery or battery against a household member.

Section 29-19-4 (emphasis added).

**{23}**   As the district court correctly noted, "Section 29-19-4(A)(5) uses the term, 'convicted,' but does not include deferred sentencing. . . . The same is true of Section 29-19-4(B)(4) with regard to misdemeanor assault, battery or battery against a household member. This is in contrast to Section 29-19-4(B)(1), which does include the term 'convicted' as well as reference to . . . deferment." [2] Benns argues that "the specificity of the Legislature in [Sub]section (B)(1) demonstrates legislative awareness of and the decision to include deferred sentences . . . for these types of offenses, as well as highlights the absence of these terms in the other sections of the statute." In other words, Benns infers that a "deferment" is different from a "conviction" because both terms are used in 29-19-4(B)(1), and the Legislature did not intend to disqualify applicants who had received a deferred sentence following a felony conviction because the Legislature did not specifically identify deferred sentences in Section 29-19-4(A)(5); likewise for a misdemeanor conviction for aggravated battery against a household member, *see* § 29-19-4(B)(4).

**{24}**   While Benns's reading of these subsections conforms to the rule of statutory construction that a statute must be read in its entirety and each part construed "in connection with every other part in order to produce a harmonious whole," *Britton v. Off. of the Att'y Gen.*, 2019-NMCA-002, ¶ 28, 433 P.3d 320 (internal quotation marks and citation omitted), we cannot apply his interpretation to some of the other specifically listed items in Section 29-19-4(B)(1) without reaching an absurd and unreasonable result. *See State v. Strauch*, 2015-NMSC-009, ¶ 13, 345 P.3d 317. In particular, the Legislature included guilty pleas and no contest pleas among the specifically listed items in Section 29-19-4(B)(1). Under Benns's interpretation, convictions arising from guilty or no contest pleas would also not be considered "convictions" under the subsections at issue here. That would lead to an absurd result whereby someone

---

[2]DPS argues that the term "deferment" in Section 29-19-4(B)(1) could refer to a deferred adjudication rather than a deferred sentence. However, DPS has not provided any New Mexico authority expressly discussing or applying a deferred adjudication procedure; rather, DPS points only to a single case from the United States District Court for the District of New Mexico in which that court mentioned that "New Mexico's *conditional discharge statute* is known as a deferred adjudication statute." *United States v. Silva-Borrego*, No. 00-1164 JP, 2000 WL 36739489, at *1 (D.N.M. Dec. 21, 2000) (emphasis added) (internal quotation marks omitted) (citing to a Ninth Circuit Court of Appeals case in support). Thus, if we accepted DPS's argument, then Section 29-19-4(B)(1) would effectively say that DPS must deny a concealed handgun license to an applicant who has "received *a conditional discharge*, a diversion or a [*conditional discharge*] . . . [for] a misdemeanor offense involving a crime of violence within ten years immediately preceding the application[.]" DPS has offered no argument to explain or justify such redundancy.

In contrast to DPS's suggestion, New Mexico cases use the term "deferment" when addressing deferred sentences. *See, e.g.*, *Reese*, 2014-NMSC-013, ¶ 4 (stating that the defendant "successfully satisfied the conditions of his deferment").

convicted by a jury would be prohibited from obtaining a concealed carry license, while someone who pleads guilty or no contest to the same charge would not. We find no indication of a legislative intent to distinguish between applicants in this way and thus decline to adopt such an interpretation here. *See Nat'l Council on Comp. Ins. v. N.M. State Corp. Comm'n*, 1986-NMSC-005, ¶ 5, 103 N.M. 707, 712 P.2d 1369 (stating that "courts may substitute, disregard or eliminate, or insert or add words to a statute, if it is necessary to do so to carry out the legislative intent or to express the clearly manifested meaning of the statute").

**{25}** We adhere to the principle that "words used in a statute are to be given their ordinary and usual meaning," *Blue Canyon Well Ass'n v. Jevne*, 2018-NMCA-004, ¶ 9, 410 P.3d 251 (internal quotation marks and citation omitted), and "presume the [L]egislature is aware of existing law when it enacts legislation." *State v. McClendon*, 2001-NMSC-023, ¶ 10, 130 N.M. 551, 28 P.3d 1092 (internal quotation marks and citation omitted). Applying these devices, we presume the Legislature was aware of *Padilla* and *Brothers* when it enacted Section 29-19-4 in 2003 and used the term "convicted" in Sections 29-19-4(A)(5) and (B)(4) to mean an adjudication of guilt, regardless of the imposition of a sentence. *See* § 30-1-11 (stating that a person is convicted if found guilty by jury verdict, guilty or no contest plea, or a finding by the court in a bench trial). Since the successful completion of a deferred sentence leaves the underlying conviction intact, we conclude that the term "convicted" in Sections 29-19-4(A)(5) and (B)(4) applies to defendants whose charges are dismissed at the completion of deferred sentences.

**{26}** Accordingly, in light of the undisputed facts regarding Benns's prior felony charge, we hold that DPS properly denied his application for a concealed handgun license.

**CONCLUSION**

**{27}** For the foregoing reasons, we reverse the district court and reinstate DPS's denial of Benns's application for a concealed handgun license.

**{28} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**