2001-NMSC-023

28 P.3d 1092

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Chris McCLENDON, Defendant–
Appellant.**

No. 26,296.

Supreme Court of New Mexico.

Aug. 3, 2001.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Christopher Bulman, Assistant Public Defender, Santa Fe, NM, for Appellant.

## OPINION

BACA, Justice.

{1} Defendant was convicted of kidnapping contrary to NMSA 1978, § 30–4–1(A)(4) (1995), two counts of second-degree criminal sexual penetration (fellatio) contrary to NMSA 1978, § 30–9–11(D) (1995), and misdemeanor aggravated battery as a lesser included offense to criminal sexual penetration

contrary to NMSA 1978, § 30–3–5(B) (1969). Defendant also admitted that he had been convicted of two prior felonies, one of which was a prior violent sexual offense. Based on his prior conviction for a violent sexual offense, Defendant was sentenced to two mandatory terms of life imprisonment in addition to the basic sentence of nine years on each count of sexual penetration. *See* NMSA 1978, § 31–18–25 (1997) (stating that "the defendant shall, in addition to the punishment imposed for the second violent sexual offense conviction, be punished by a sentence of life imprisonment"). The district court also sentenced Defendant to a term of nine years on the kidnapping offense with a four year habitual offender enhancement, and three hundred sixty-four days on the aggravated battery conviction. In sum, Defendant received a total sentence of thirty-two years less one day plus two life sentences. Defendant's life sentences confer jurisdiction in this Court. *See* N.M. Const. art. VI, § 2.

■ {2} Defendant posits four claims of error, of which we will evaluate two in detail in this opinion. After evaluating both the facts and law applicable to Defendant's two remaining claims, we have determined that they are without merit and are hereby denied.[1,2] *See, e.g., State v. Gonzales,* 2000–NMSC–028, ¶ 2, 129 N.M. 556, 11 P.3d 131 (disposing of claims deemed unworthy of extended discussion). The first issue that we address is whether Defendant's two criminal sexual penetration convictions by fellatio violate the federal constitutional protection against double jeopardy. *See* U.S. Const. amend. V.[3] The second issue that we address is whether the Legislature authorized the enhancement of *both* of Defendant's convictions for criminal sexual penetration through the enactment of Section 31–18–25. This second question is purely a question of statutory construction that we review de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

■ {3} This case arises from events that occurred on the evening of February 16 and the morning of February 17, 1999. Defendant and the victim were passing acquaintances. Defendant frequented the bar and restaurant where the victim worked. The victim and Defendant told greatly differing accounts of the events that transpired during the evening. The victim stated that she agreed to go for a short ride with the Defendant and that Defendant took her to an isolated area where he sexually attacked her. Defendant told an account of a consensual sexual encounter that ended in a verbal and physical fight. In evaluating Defendant's claim, we view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We recognize that Defendant told a differing story from the victim but "[t]he fact finder may reject defendant's version of the incident." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Since the specific facts

---

1. Defendant claims that the jury should have been instructed on the lesser included offenses for the two counts of criminal sexual penetration by fellatio. However, Defendant's trial counsel withdrew his request for the lesser included instructions after Defendant testified that the sex acts were consensual. Defendant abandoned this claim because no reasonable view of the evidence supported the lesser included instruction. *See State v. Curley,* 1997–NMCA–038, ¶ 5, 123 N.M. 295, 939 P.2d 1103. Therefore, the district court was correct in not issuing a jury instruction on the lesser included offenses in this case.

2. Defendant also appears to argue that the trial court unduly limited his ability to present character evidence by warning that Defendant should be careful not to open the door to a discussion of his prior sexual offense convictions. However, the trial court merely issued a general warning and did not make any specific evidentiary rulings. Therefore, Defendant fails to show that his ability to present character evidence was actually limited and fails to show any resulting prejudice from the trial court's warnings.

3. We have not previously construed our Double Jeopardy Clause, Article II, Section 15, more broadly than its federal counterpart in the context of multiple punishments. *See Swafford v. State,* 112 N.M. 3, 7 n. 3, 810 P.2d 1223, 1227 n. 3 (1991). Although Defendant makes multiple references to the state constitution, he does not argue that his rights are not adequately protected by the federal provision, nor does he justify a departure from federal precedent. *See State v. Gomez,* 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Therefore, we address Defendant's claim only under the federal Double Jeopardy Clause.

regarding the attack are only pertinent to the double jeopardy analysis, we will include specific factual allegations when relevant.

## I.

{4} Defendant claims that his two convictions for criminal sexual penetration by fellatio violate the federal Double Jeopardy Clause. The starting point for our analysis is the language of the Fifth Amendment: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. In *Swafford v. State,* this Court described the critical question in multiple punishment cases as "whether the defendant is being punished twice for the *same offense.*" 112 N.M. 3, 7–8, 810 P.2d 1223, 1227–28 (1991). *Swafford* teaches that there are two distinct "facets" of multiple punishment jurisprudence. *Id.* at 8, 810 P.2d at 1228. The first type of multiple punishment case identified in *Swafford* was the "unit of prosecution cases." *Id.* "In those cases the defendant has been charged with multiple violations of a single statute based on a single course of conduct." *Id.* That is compared with the "double-description cases" where "the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Id.* This is a unit of prosecution case, where Defendant has been charged with multiple violations of the criminal sexual penetration statute based on a single course of conduct.

{5} This Court addressed a unit of prosecution case in the context of criminal sexual penetration in *Herron v. State,* 111 N.M. 357, 358–63, 805 P.2d 624, 625–30 (1991). The precedent set by *Herron* is binding on this Court, and its analysis is persuasive in this case. In *Herron,* the defendant alleged that his nineteen convictions for second-degree criminal sexual penetration violated the Double Jeopardy Clause. *Id.* at 358, 805 P.2d at 625. This Court recognized that the issue essentially becomes one of statutory construction. *Id.* at 359, 805 P.2d at 626. After evaluating authority from other jurisdictions, and considering the implication of the rule of lenity, this Court held that "Section 30–9–11 cannot be said as a matter of law to evince a legislative intent to punish separately each pen-

etration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others." *Id.* at 361, 805 P.2d at 628. Therefore, our primary concern in this context is to ensure that sufficient evidence exists to establish that each penetration is distinct from the others. In reviewing the facts of the case to determine if each penetration is distinct from the others, we must indulge "in all presumptions in favor of the verdict." *Herron,* 111 N.M. at 362, 805 P.2d at 629.

{6} To aid in determining whether each penetration is distinct from the others, *Herron* identified a number of factors relevant to the inquiry:

(1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims (although not relevant here, multiple victims will likely give rise to multiple offenses).

*Id.* at 361, 805 P.2d at 628 (citations omitted). Regarding the relative weight to be accorded to each factor, *Herron* stated that, "Except for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30–9–11." *Id.* at 362, 805 P.2d at 629. After evaluating the facts in *Herron,* this Court concluded that the evidence only supported five distinct convictions. *Id.*

{7} Applying these factors to this case, we conclude that the facts clearly demonstrate that the two acts of fellatio were distinct from one another, and therefore, there is no double jeopardy violation. We find that there was sufficient evidence presented at trial to prove that the first act of fellatio occurred shortly after Defendant

pulled off the main road and stopped his vehicle. The initial assault occurred while Defendant was still in the driver's seat. The victim testified that the following events occurred shortly after pulling off the main road: "The next thing I know my head was in his lap and his pants were already open and he told me that I better give him head because that's all that I knew how to do." The victim resisted, but Defendant forced the initial oral copulation at this time.

{8} The victim testified that she was forced to perform fellatio on Defendant several other times that evening. She also testified to a number of intervening events following the first act of fellatio. She testified that Defendant pinned her in the passenger's seat and beat her head against the window. He forced her to have vaginal intercourse and continued to beat her head against the window of his truck. She also described Defendant's attempt to drag her from the truck, in an effort to penetrate her anally with both his penis and his finger. We find that there is sufficient evidence to conclude that: (1) there were a number of significant intervening acts between the two instances of fellatio including the beating, the attempted removal of the victim from the truck, and the attempted anal penetration; (2) there were serial penetrations of different orifices and attempted penetrations of different orifices; and (3) there was a sufficient time interval between the acts for us to conclude that the two acts of fellatio were sufficiently distinct in both time and location. Based on this, we conclude that each act of fellatio was distinct from the other. Therefore, Defendant's conviction of two counts of criminal sexual penetration by fellatio does not violate the Double Jeopardy Clause.

## II.

{9} We now turn to the issue of whether the Legislature authorized the enhancement of *both* of Defendant's criminal sexual penetration convictions through the enactment of Section 31–18–25. The starting point for our analysis is the language of Section 31–18–25(A):

> When a defendant is convicted of a second violent sexual offense, and each violent sexual offense conviction is part of a separate transaction or occurrence, and at least

the second violent sexual offense conviction is in New Mexico, the defendant shall, in addition to the punishment imposed for the second violent sexual offense conviction, be punished by a sentence of life imprisonment.

A "violent sexual offense" is defined as criminal sexual penetration in the first degree or second degree. Section 31–18–25(F). Defendant's current criminal sexual penetration conviction in the second degree qualifies as a "violent sexual offense." *Id.* Defendant admitted that he had been convicted of a prior violent sexual offense in 1983. Therefore, his current conviction constitutes a "second violent sexual offense" within the meaning of Section 31–18–25(A). Finally, since both of Defendant's violent sexual offense convictions occurred in New Mexico, Defendant falls within the provisions of the statute that mandate that Defendant's sentence be enhanced by a sentence of life imprisonment. Section 31–18–25(A). Therefore, the enhancement of one of Defendant's violent sexual offenses is expressly required by the statute. The only remaining question is whether the statute authorizes the enhancement of *both* of Defendant's current convictions.

{10} Defendant and the State agree that the resolution of this issue depends on our construction of the language: "second violent sexual offense." The question is whether "second violent sexual offense" is limited to Defendant's second criminal sexual penetration conviction or whether it is the second and each successive violent sexual offense conviction. In resolving this question of statutory construction we are bound to effectuate the intent of the Legislature. *See, e.g., State v. Rowell,* 121 N.M. at 114, 908 P.2d at 1382 ("The main goal of statutory construction is to give effect to the intent of the legislature."). The Legislature is solely responsible for the determination of penalties for criminal conduct. *See, e.g., State v. Mabry,* 96 N.M. 317, 321, 630 P.2d 269, 273 (1981) (citations omitted) ("It has long been recognized in this state that it is solely within the province of the Legislature to establish penalties for criminal behavior."). In construing this enhancement statute we can "presume the legislature is aware of existing law when it enacts legislation."

*State ex rel. Human Servs. Dep't (In re Kira M.),* 118 N.M. 563, 569, 883 P.2d 149, 155 (1994). Although this particular enhancement, applying to a second violent sexual offense, is a recent enactment, we have in the context of our general habitual offender statutes construed other enhancement statutes. We look to those cases to inform our decision.

{11} In the 1977 case of *State v. Baker,* 90 N.M. 291, 292, 562 P.2d 1145, 1146 (Ct.App. 1977), the Court of Appeals interpreted the habitual offender statute in effect at the time. In *Baker,* two defendants were convicted of multiple felonies: false imprisonment, robbery, and unlawful taking of a motor vehicle. *Id.* at 292, 562 P.2d at 1146. Each defendant also had a prior New Mexico felony conviction. *Id.* The trial court enhanced each of the current three convictions as a second felony under the habitual offender statute. *Id.* The defendants claimed that it would be "illogical to treat each of the three subsequent convictions as second felonies because two of the last three convictions [were] their third and fourth felony convictions." *Id.* at 293, 562 P.2d at 1147. Based on this argument, the defendants asserted that there was only one "second" felony because the remaining convictions were their third and fourth convictions respectively. *See id.* In support of this argument, the defendants relied on the fact that the statute was written in the singular, and the fact that penal statutes are to be strictly construed in favor of the defendant. *Id.*

{12} The Court of Appeals, in *Baker,* dismissed the defendants' reading of the habitual offender statute. First, the Court cited the rules of statutory construction for the premise that "the singular may be extended to several things." *Id.* The Court stated that there was nothing in the habitual offender statute that would "indicate a legislative intent that 'conviction' may not be extended to cover 'convictions'." *Id.* The Court then addressed the defendants' reliance on the rule of lenity by saying, "there is no basis for construction when the language is unambiguous; in this situation the Legislature must be understood as meaning what it expressly declared." *Id.* at 293–94, 562 P.2d at 1147–48. The Court upheld the enhancement of the defendants' three convictions by stating,

" 'Any felony' is an inclusive term; it does not distinguish between multiple felony convictions and single felony convictions." *Id.* at 294, 562 P.2d at 1148.

{13} The next meaningful analysis of an enhancement statute took place in *State v. Harris,* 101 N.M. 12, 19–20, 677 P.2d 625, 632–33 (Ct.App.1984). In *Harris,* the Court of Appeals construed the newly adopted habitual offender statute, NMSA 1978, § 31–18–17(D) (Cum.Supp.1983), that had replaced that statute at issue in *Baker. Harris,* 101 N.M. at 20, 677 P.2d at 633. The defendant in *Harris* was convicted of two burglary counts and two larceny counts. *Id.* at 19, 677 P.2d at 632. The defendant was given a basic sentence of two years for each of the convictions, and then because he was a habitual offender, each of these convictions was enhanced by an additional eight years. *Id.* The total sentence was four ten-year sentences, each to be served consecutively, resulting in a forty-year sentence. *Id.* The defendant contended that *Baker* did not control because the Legislature had since changed the language from "any felony," as construed in *Baker,* to "a felony" in the new statute. *Id.* at 20, 677 P.2d at 633. The Court of Appeals recognized the difference but stated:

> This did not change the requirement that the sentence for current multiple felonies be enhanced on the basis of prior felony convictions. Each of the four current felony convictions is 'a' felony; the statute requires that the sentence for each of the current convictions be enhanced.

*Id.* Therefore, despite the Legislature's alteration of the language of the statute, the Court of Appeals construed the habitual enhancement statute to authorize the enhancement of multiple current convictions.

{14} Finally, in *State v. Howard,* 108 N.M. 560, 561–63, 775 P.2d 762, 763–65 (Ct.App. 1989), the Court of Appeals again addressed the enhancement of multiple convictions under the habitual offender statute. The defendant in *Howard* was convicted of three offenses and given consecutive sentences. *Id.* at 560, 775 P.2d at 762. The district court then enhanced each of the defendant's convictions because of his habitual offender status. *Id.* The Court of Appeals cited *Har-*

*ris* for the proposition that the enhancement statute "requires that the sentence for each of defendant's current multiple felonies be enhanced on the basis of the prior felony conviction." *Id.* at 561, 775 P.2d at 763 (citing *Harris,* 101 N.M. at 20, 677 P.2d at 633). The Court also reviewed the purpose of the habitual offender statute:

> The purpose of Section 31–18–17 is to deter future crimes. . . . Enhancement of the basic sentence for each felony conviction effects that deterrent purpose. The fact that some deterrent purpose would be served by enhancing only the total sentence is not dispositive of the legislature's intent in drafting Section 31–18–17.

*Id.* at 562, 775 P.2d at 764. *Howard* upheld the enhancement of the defendant's sentence by concluding that, "[i]f a person with a prior felony conviction is convicted of multiple felonies, then there are several basic sentences. Thus, there may be multiple enhancements." *Id.* at 563, 775 P.2d at 765.

■ {15} Defendant in this case asserts many of the same arguments that have been rejected regarding the enhancement of multiple convictions. First, the Defendant argues that the Legislature only authorized a single life sentence in the enhancement statute. This argument requires that we construe "second violent sexual offense" from Section 31–18–25 as only authorizing a single enhancement. However, as our review of *Baker, Harris,* and *Howard* have demonstrated, we have consistently construed enhancement statutes that are written in the singular as authorizing the imposition of multiple enhancements. We presume that the Legislature was aware of our construction of enhancement statutes when it adopted Section 31–18–25 in 1997. *See In re Kira M.,* 118 N.M. at 569, 883 P.2d at 155.

{16} We also have a rule of statutory construction that states, "Use of the singular number includes the plural, and use of the plural number includes the singular." NMSA 1978, § 12–2A–5(A) (1997). Applying this rule, we conclude that "second violent sexual offense" includes both of Defendant's violent sexual offenses. *Cf. Howard,* 108 N.M. at 563, 775 P.2d at 765 ("If a person with a prior felony conviction is convicted of multiple felonies, then there are several basic sentences."). In this case, there are two "second" convictions that are eligible for enhancement. Finally, Defendant makes no argument that we should overrule the precedent set in *Baker, Harris,* and *Howard,* and we see no reason to do so in this case.

■ {17} Defendant also asserts that "the rule of lenity is often an appropriate tool of statutory construction in such contexts." However, the rule of lenity is resorted to only when " 'insurmountable ambiguity persists regarding the intended scope of [that] statute.' " *State v. Anaya,* 1997–NMSC–010, ¶ 32, 123 N.M. 14, 933 P.2d 223 (quoting *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994)). Defendant has not convinced this Court that Section 31–18–25 is ambiguous. Instead, we conclude that the Legislature clearly intended, through the passage of Section 31–18–25, to provide for enhanced punishment for each subsequent conviction for a violent sexual offense. As in *Baker,* "there is no basis for construction when the language is unambiguous; in this situation the Legislature must be understood as meaning what it expressly declared." 90 N.M. at 293–94, 562 P.2d at 1147–48.

{18} Finally, Defendant attempts to distinguish this case from the construction of our general habitual enhancement statute. He argues that the sentence is so severe following the enhancement of multiple convictions, that there is no deterrent effect as was discussed in *Howard,* 108 N.M. at 562, 775 P.2d at 764 ("The purpose of Section 31–18–17 is to deter future crimes."). However, in addition to the deterrent effect served by habitual offender statutes, we have repeatedly recognized a second underlying purpose. In *State v. Baldonado,* the Court of Appeals recognized the deterrent purpose, but added that the "[habitual offender act] is designed to protect society against habitual offenders." 79 N.M. 175, 176, 441 P.2d 215, 216 (Ct.App. 1968); *see also State v. Edmondson,* 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App. 1991) ("The chief purposes of habitual-offender statutes are (1) the deterrent/rehabilitative purpose of discouraging those who have previously committed serious crimes from engaging in similar conduct within New Mexico and (2) the punitive/protective purpose of incarcerating for a longer period of time those who have shown a repeated inclination to commit serious offenses."); *State v. Lu-*

*jan,* 90 N.M. 103, 104, 560 P.2d 167, 168 (1977) (quoting *State v. Gonzales,* 84 N.M. 275, 276, 502 P.2d 300, 301 (Ct.App.1972)). By enacting Section 31–18–17, the Legislature intended to single out repeat violent sexual offenders for more severe punishment than that received by habitual offenders generally and intended to protect society from their criminal activity. The State asserts that Section 31–18–25 "evinced a legislative recognition that repeat violent sex offenders are a greater threat to society than other repeat felony offenders." By enacting Section 31–18–25, the Legislature mandated that district judges recognize this and treat repeat violent sexual offenders accordingly.

## III.

{19} We hold that Defendant's two criminal sexual penetration convictions by fellatio do not violate the Double Jeopardy Clause. Additionally, we follow the precedent set by the construction of our other enhancement statutes and hold that Section 31–18–25 authorizes the imposition of multiple enhancements for multiple current convictions. Therefore, Defendant's conviction and sentence is affirmed.

{20} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, GENE E. FRANCHINI, Justice, PAMELA B. MINZNER, Justice and PETRA JIMENEZ MAES, Justice.