This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 34,293**

**JUSTIN WHITT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Becca Salwin, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    Defendant Justin Whitt was convicted in a jury trial on two counts of second degree criminal sexual penetration (CSP) causing personal injury, contrary to NMSA 1978, Section 30-9-11(E) (2009), and two counts of third degree CSP, contrary to Section 30-9-11(F). On appeal, Defendant argues that (1) double jeopardy protections prohibit three of his four CSP convictions, and (2) sufficient evidence does not support his conviction for CSP with respect to the charge of anal intercourse. Defendant additionally argues that he received ineffective assistance of counsel. For the reasons discussed herein, we conclude that Defendant's substantive arguments lack merit. We additionally conclude that Defendant's ineffective assistance claim is more properly addressed in a habeas corpus proceeding. We affirm.

**BACKGROUND**

**Victim's Testimony**

{2}    The events at issue in this case occurred on August 28 and 29, 2012. On the evening of August 28, 2012, Defendant, his girlfriend, Katrina Perea (Girlfriend), and the victim, Tawnya Peterson (Victim), along with other friends, spent several hours at an Albuquerque bowling alley. The group consumed alcohol at the bowling alley, although Victim testified that she only had "two sips" of beer. After bowling, the group convened at Girlfriend's apartment and continued to consume alcohol. Victim also consumed alcohol at the apartment. Victim testified that Defendant was using

2

marijuana and cocaine but that she did not consume any drugs. The other friends left between 2:00 a.m. and 3:00 a.m., and Defendant, Girlfriend, and Victim remained at the house. They talked for a while longer and then went to bed. Defendant and Girlfriend went to sleep in the bedroom. Victim went to sleep on a pull-out bed in the living room.[1]

{3}     Victim testified that she awoke to a feeling of pressure in her vagina. She then realized that Defendant was engaged in sexual intercourse with her. Victim was conscious of vaginal penetrations for approximately five seconds, at which time Defendant lifted Victim and repositioned her onto the couch. Defendant then engaged in anal intercourse. The anal intercourse lasted approximately two seconds, during which time Victim "tried to push [Defendant] off." After disengaging from the anal intercourse, Defendant re-engaged in sexual intercourse with Victim for approximately ten seconds. Defendant then lifted Victim's head and engaged Victim in fellatio. Victim testified that, "when it was happening, when I was trying to say 'stop,' [Defendant] would cover my mouth and shush me." Victim additionally testified that she did not consent to any portion of the incident. When asked on cross-

---

[1]After review of the record and trial transcript, we conclude that half of the couch pulled out perpendicularly into a pull-out bed while the other half remained in place. Though seemingly trivial, the configuration of the couch directly relates to Defendant's repositioning of Victim during the incident.

examination whether the anal intercourse could have been a mistake, Victim responded that she did not know. When asked on redirect-examination whether she knew if Defendant intended to engage in anal intercourse, Victim responded that she did not know.

{4} After Defendant returned to the bedroom, Victim went into the bathroom where she "collapsed [and s]tarted crying hysterically." Soon after, she collected her belongings and left the apartment. Victim then called a friend, who provided her with the phone number to the Sexual Assault Nurse Examiner (SANE) unit. Victim called the SANE unit between 8:00 a.m. and 8:30 a.m. and made an appointment for 10:30 a.m. She slept through this appointment but proceeded to the examination after waking up. Two days later, Defendant called 911 to report the incident.

**SANE and Law Enforcement Testimony**

{5} SANE Nurse Sarah Kabalka examined Victim upon her arrival. Kabalka testified that her examination revealed injuries to Victim's labia majora, minora, fossa, posterior fourchette, and anus. Kabalka also testified to the existence of a linear abrasion on Victim's side. The State concluded its case in chief by calling three Albuquerque Police Department employees: Officer Mark Clingenpeel, Detective Karyn Romero, and Ms. Donna Manogue from the Biology Unit. Officer Clingenpeel and Detective Romero testified to the details of their respective investigations.

4

Manogue testified to the results of DNA testing conducted in association with the case.

**Defendant's Testimony**

{6} Defendant testified that after the group returned from bowling, he and others, including Victim, consumed alcohol, marijuana, and cocaine. After going to bed, he was unable to sleep because of the cocaine. Defendant returned to the living room and engaged in sexual activity with Victim. With respect to the anal intercourse, Defendant testified that "it was honestly an accident[,]" resulting from a "slip" during consensual sexual intercourse. Defendant also testified that the encounter began on the pull-out bed and moved to the couch.

**Victim's Rebuttal Testimony**

{7} After Defendant's testimony, the State recalled Victim to rebut various portions of Defendant's direct and cross-examination testimony. Defense counsel did not object to the admission of Victim's rebuttal testimony.

**STANDARD OF REVIEW**

{8} "Double jeopardy challenges raising the issue of the unit of prosecution are reviewed de novo." *State v. Glascock*, 2008-NMCA-006, ¶ 11, 143 N.M. 328, 176 P.3d 317. In reviewing challenges to the sufficiency of the evidence supporting a conviction "[w]e view the evidence in the light most favorable to the [s]tate, resolving

5

all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Consaul*, 2014-NMSC-030, ¶ 42, 332 P.3d 850 (internal quotation marks and citation omitted). In doing so, "[i]t is our duty to determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). We review ineffective assistance of counsel claims de novo. *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980.

## DOUBLE JEOPARDY

{9}    Defendant argues on appeal that, even if Victim did not consent to the sexual activity, Section 30-9-11 does not contemplate four separate units of prosecution for the conduct alleged. Unit of prosecution claims in the context of Section 30-9-11 are reviewed by reference to *Herron v. State*, in which our Supreme Court held,

> [i]n determining whether an [assaultive] act is distinct our analysis is informed by the following factors culled from decisions of other jurisdictions that have considered the issue of multiple punishment in cases of rape: (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims[.]

6

1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. *Herron* additionally indicated that "[e]xcept for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30-9-11." *Id.*

{10} Applying *Herron*, Defendant's penile penetration of Victim's vagina, anus, and mouth constitute three distinct offenses under Section 30-9-11. *See, e.g.*, *State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 ("Under *Herron*, penetrations of separate orifices with the same object constitute separate offenses. Therefore, the acts of anal intercourse, sexual intercourse, and at least one instance of fellatio constitute separate offenses under *Herron*."). We now consider whether the subsequent sexual intercourse was a distinct act subject to prosecution.

{11} "In reviewing the facts of the case to determine if each penetration is distinct from the others, we must indulge in all presumptions in favor of the verdict." *State v. McClendon*, 2001-NMSC-023, ¶ 5, 130 N.M. 551, 28 P.3d 1092 (internal quotation marks and citation omitted). Victim's testimony established that (1) when she awoke on the pull-out bed, Defendant was engaged in sexual intercourse with her; (2) Defendant repositioned Victim's body from the pull-out bed to the couch; (3) Defendant engaged in anal intercourse, which Victim resisted; and (4) Defendant then re-engaged in sexual intercourse. This sequence implicates several of the *Herron*

7

factors. First, Defendant repositioned Victim from the pull-out bed to the couch between the acts of sexual intercourse. While this movement was not significant with respect to distance, our case law does not require that it be so. *See Wilson*, 1993-NMCA-074, ¶ 9 (holding sexual acts to be distinct when the victim was repositioned from the bathroom to the bedroom). Second, there was an intervening event—the anal intercourse and resistance thereto—between the acts of sexual intercourse. *See id.* (holding a subsequent instance of fellatio to be distinct when separated by other sexual acts). Finally, the "serial penetrations of different orifices" indicates distinct acts. *Herron*, 1991-NMSC-012, ¶ 15. Because the facts demonstrate that the two acts of sexual intercourse were distinct from one another, there is no double jeopardy violation.

**SUFFICIENCY OF THE EVIDENCE**

{12}     Defendant additionally argues that sufficient evidence does not support his conviction for CSP with respect to the charge of anal intercourse. Specifically, Defendant asserts that the State did not prove that he intended to engage in anal intercourse with Victim.

{13}     Section 30-9-11 defines CSP as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal

8

openings of another, whether or not there is any emission." Section 30-9-11(A). Thus, intent is an element of the crime and must be proved beyond a reasonable doubt. *See State v. Sellers*, 1994-NMCA-053, ¶ 17, 117 N.M. 644, 875 P.2d 400 ("The [s]tate has the burden of proving beyond a reasonable doubt each element of the crime."). However, "a defendant's knowledge or intent generally presents a question of fact for a jury to decide." *State v. Muraida*, 2014-NMCA-060, ¶ 18, 326 P.3d 1113 (alteration, internal quotation marks, and citation omitted). In answering this question, "the fact finder may infer from circumstantial evidence that the defendant acted with the requisite intent; direct evidence of the defendant's state of mind is not required." *Id.*

**{14}** The circumstantial evidence in this case supports the jury's conclusion that Defendant intended to engage in anal intercourse with Victim. Victim testified that Defendant disengaged from sexual intercourse, repositioned her onto the couch, and immediately engaged in anal intercourse without re-engaging in sexual intercourse. Only after Victim resisted did Defendant re-engage in sexual intercourse. This testimony demonstrates Defendant's intent to engage in anal intercourse and directly contradicts Defendant's testimony that his penis "slipped out" during sexual intercourse. Additionally, and contrary to the characterization in Defendant's brief in

chief, Victim additionally testified on cross-examination that she "d[id] not know" if Defendant intended to engage in anal intercourse.[2]

{15} Defendant offers his own testimony as proof that the anal intercourse was accidental rather than intentional. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Because a rational jury could have found that Defendant had the requisite intent to engage in anal intercourse with Victim, sufficient evidence supports Defendant's conviction for CSP with respect to the anal intercourse.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

{16} "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the

---

[2]Defendant's brief in chief states "[Victim] testified similarly that she did not believe the anal sex was intentional and instead testified that it could have been accidental." Victim's actual testimony was as follows:

Defense Counsel: And could that have been a mistake, or you don't
know?
Victim: I do not know.
Defense Counsel: So that might not have been intentional?
Victim: Correct.

While Victim effectively testified that the anal intercourse could have been unintentional, she in no way testified that "she did not *believe* the anal sex was intentional." (Emphasis added).

10

defense." *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). The absence of prejudice is sufficient to dispose of an ineffective assistance of counsel claim. *See State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we need not consider whether counsel's performance was deficient.").

{**17**}     Defendant's first argument relates to his trial counsel's decision not to call either Girlfriend or an expert witness to testify in the case. With respect to Girlfriend, Defendant does not offer any compelling argument as to how he was prejudiced by the absence of her testimony. Defendant claims that Girlfriend "would have testified to the alleged victim's character and reputation as a liar." Defendant does not provide record citation to any material indicating the likelihood of such testimony. *See Chavez v. Lovelace Sandia Health Sys., Inc.*, 2008-NMCA-104, ¶ 37, 144 N.M. 578, 189 P.3d 711 ("[W]e are not obligated to search the record to find support for a party's argument[.]"). Defendant additionally claims that Girlfriend would have "counter[ed Victim]'s denial on the stand of being extremely drunk and high on the night of this incident[.]" Defendant testified that Victim was drinking and using drugs that night. As such, the jury already possessed the information Defendant claimed Girlfriend would provide.

**{18}** Similarly, Defendant does not offer any compelling argument as to how he was prejudiced by the absence of expert witness testimony. Defendant claims that an expert witness could "explain how [Victim's] injuries could be caused by consensual sex[.]" Kabalka testified that Victim's injuries could have resulted from either consensual or non-consensual sex. As a result, again, the jury already possessed the information Defendant claims an expert witness would provide.

**{19}** The decision to call certain witnesses is a tactical decision that rests within the control of trial counsel. *State v. Orosco*, 1991-NMCA-084, ¶ 35, 113 N.M. 789, 833 P.2d 1155. "Rarely will we engage on appeal in Monday-morning quarterbacking of trial counsel's tactics and strategy, and remand for a hearing on the issue of ineffective assistance of counsel[.]" *State v. Jensen*, 2005-NMCA-113, ¶ 14, 138 N.M. 254, 118 P.3d 762. Defendant fails to demonstrate that his trial counsel's tactical decisions with respect to witnesses caused prejudice to his defense. *See Paredez*, 2004-NMSC-036, ¶ 13 ("To establish ineffective assistance of counsel, a defendant must show . . . the deficient performance prejudiced the defense." (internal quotation marks and citation omitted)).

**{20}** Defendant also argues, citing Rule 11-403 NMRA, that his trial counsel's failure to object to Victim being recalled as a rebuttal witness resulted in Victim being allowed to testify twice. "The admission of rebuttal testimony is within the discretion

of the trial court[.]" *State v. Stanley*, 2001-NMSC-037, ¶ 39, 131 N.M. 368, 37 P.3d 85. Defendant does not provide record citation to specific instances in which Victim's rebuttal testimony was cumulative. *See Chavez*, 2008-NMCA-104, ¶ 37 ("[W]e are not obligated to search the record to find support for a party's argument[.]"). Even if Victim's rebuttal testimony was cumulative under Rule 11-403, Defendant does not explain how such testimony prejudiced his defense. *See Paredez*, 2004-NMSC-036, ¶ 13 ("To establish ineffective assistance of counsel, a defendant must show . . . the deficient performance prejudiced the defense." (internal quotation marks and citation omitted)).

{21} Because Defendant has not met his burden to establish ineffective assistance of counsel, his requested relief is denied. Defendant may, of course, raise this issue in a habeas corpus proceeding. *See State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 ("Habeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{22} We affirm Defendant's convictions.

{23} **IT IS SO ORDERED.**

13

_____

**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____

**M. MONICA ZAMORA, Judge**


_____

**STEPHEN G. FRENCH, Judge**