This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**SALVADOR BRAVO,**
**Defendant-Appellant.**

Docket No. A-1-CA-36025
COURT OF APPEALS OF NEW MEXICO
May 29, 2019

APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY, Jennifer E. DeLaney, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM for Appellee

Bennett J. Baur, Chief Public Defender, Aja Oishi, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR:  J. MILES HANISEE, Judge JACQUELINE R. MEDINA, Judge

**AUTHOR:** JULIE J. VARGAS

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}**     Defendant Salvador Bravo appeals his two criminal sexual penetration of a minor (CSPM) convictions and his contributing to the delinquency of a minor (CDM) conviction on double jeopardy grounds. Because his CDM conviction and his CSPM convictions violate double jeopardy, we reverse and remand with instructions to vacate the CDM conviction and one of the CSPM convictions. Finding no merit to Defendant's other

arguments, all of which are raised pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, we affirm Defendant's remaining CSPM conviction. Because this is a memorandum opinion, we limit our recitation of the facts to those relevant to our analysis.

**BACKGROUND**

**{2}** Victim, a minor, frequented the Bravos household, both as an invited guest visiting the children living there and as a babysitter. According to Victim's testimony, she was sleeping on a couch in the living room when Defendant entered the room, pulled her onto the floor, and stated, "I can't take it any more." Defendant then laid Victim on her back and briefly straddled her before removing Victim's pants and underwear and vaginally penetrating her with his finger. Defendant then vaginally penetrated Victim with his penis. When he penetrated Victim, Defendant whispered to her that he wanted to go deeper and feel what it was like to ejaculate inside of her. A jury convicted Defendant of contributing to the delinquency of a minor (CDM) and two count of criminal sexual penetration of a minor (CSPM).

**DISCUSSION**

**{3}** Defendant argues that his convictions—two for CSPM and one for CDM—violate double jeopardy. Defendant also argues that his CDM conviction is premised on a flawed interpretation of the statute. Pursuant to *Franklin* and *Boyer*, Defendant makes four additional arguments: (1) the prosecutor's misconduct at trial amounted to fundamental error; (2) he received ineffective assistance of trial counsel; (3) the evidence proffered at trial was insufficient to support any of his convictions; and (4) the errors that occurred in the trial resulted in cumulative error requiring reversal.

**A.    Double Jeopardy**

**{4}**  The double jeopardy clause protects against multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223; U.S. Const. amend. V. ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]"). There are two types of multiple punishment cases: unit of prosecution, and double description. Unit of prosecution cases involve a defendant who is "charged with multiple violations of a single statute based on a single course of conduct," while double descriptions cases involve a defendant who is "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Swafford*, 1991-NMSC-043, ¶¶ 8-9.

**{5}** Defendant makes two double jeopardy arguments—one unit of prosecution and one double description. First, Defendant argues that his two convictions for CSPM violate double jeopardy, presenting a unit of prosecution issue. Defendant also argues that his convictions for both CDM and CSPM violate double jeopardy, which is a double description argument. In analyzing Defendant's double jeopardy arguments, we consider the evidence proffered at trial in the light most favorable to the verdict, keeping

in mind that although some accounts may differ, the fact-finder may reject the defendant's version of events. *State v. McClendon*, 2001-NMSC-023, ¶ 3, 130 N.M. 551, 28 P.3d 1092. We review double jeopardy matters de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

## 1. Two CSPM Convictions

**{6}** A unit of prosecution analysis of Section 30-9-11 convictions is a matter of statutory interpretation. *See Herron v. State*, 1991-NMSC-012, ¶¶ 6-8, 111 N.M. 357, 805 P.2d 624 (noting that double jeopardy serves to prevent the prosecutor and sentencing court from imposing greater punishments than the Legislature intended, and applying principles of statutory interpretation to discern Legislature's intent behind Section 30-9-11); *see also McClendon*, 2001-NMSC-023, ¶ 5 (recognizing that whether the Legislature intended to "punish separately each penetration occurring during a continuous attack" is a matter of statutory construction). Because the language of Section 30-9-11 does not indicate the Legislature intended to punish each penetration during a sexual attack separately, courts conducting a unit of prosecution analysis under this statute look to whether "sufficient evidence exists to establish that each penetration is distinct from the others." *McClendon*, 2001-NMSC-023, ¶ 5. To determine whether the acts are distinct our courts consider six factors:

> (1) Temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tend to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) [the] defendant's intent as evidenced by his conduct and utterances; and (6) number of victims (although not relevant here, multiple victims will likely give rise to multiple offenses).

*Herron*, 1991-NMSC-012, ¶ 15; *State v. Glascock*, 2008-NMCA-006, ¶ 14, 143 N.M. 328, 176 P.3d 317 (stating that *Herron* factors are flexible and are intended to guide courts conducting a unit of prosecution analysis).

**{7}** Applying the factors identified in *Herron*, the penetrations that occurred in this case were not sufficiently distinct to warrant separate CSPM charges and therefore violate double jeopardy principles. Defendant's conduct giving rise to his two CSPM convictions included his digital penetration of Victim's vagina and his ensuing penile penetration of her vagina. Those acts occurred in immediate sequence, in the same room, and without any intervening events. In fact, none of the six *Herron* factors suggest the availability of separate charges for the brief, albeit rapidly escalating, attack on Victim, and the trial testimony shows no intervening event or period of time from the beginning to the end of the sexual abuse. Notably, in supplying the factors we are to consider in this analysis, *Herron* declined to state, as a matter of law, that digital

penetration of the vagina followed by penile penetration of the vagina constitutes two punishable acts under Section 30-9-11. 1991-NMSC-012, ¶ 13. Relying on Herron's guidance, we conclude that under the facts of this case Defendant's convictions for two counts of CSPM were insufficiently distinct and therefore violate double jeopardy.

## 2. CDM and CSPM Convictions

{8} To analyze Defendant's double description argument—that his convictions for both CDM and CSPM violate double jeopardy—we apply the two-part test set forth in *Swafford.* 1991-NMSC-043, ¶ 25. The first part of the inquiry questions "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* "The second part focuses on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* Where the conduct is unitary, but the Legislature did not intend to create separately punishable offenses, one of the convictions must be vacated. *Id.*; *see generally Swick*, 2012-NMSC-018, ¶ 31 (providing that the remedy for double jeopardy violation is to vacate offending convictions).

{9} Whether conduct is considered unitary for purposes of a double jeopardy analysis "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Swafford*, 1991-NMSC-043, ¶ 27. Courts look to considerations like time or physical space to determine whether the conduct giving rise to multiple charges carries some indicia or distinctness. *Id.* ¶ 28. Defendant's convictions for both CDM and CSPM are based on a single encounter between Defendant and Victim that occurred in one room over a short period of time. As such, the relevant conduct is unitary for purposes of our double jeopardy analysis.

{10} The second portion of a double description analysis—whether the Legislature intended to create separately punishable offenses—is guided by the language of the statute and the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932). *See State v. Luna*, 2018-NMCA-025, ¶ 9, ___ P.3d ___. Under *Blockburger*, courts consider whether each statute "requires proof of a fact which the other does not" to determine whether the offenses are intended to be punished separately. *Swick*, 2012-NMSC-018, ¶¶ 11-12, 13. However, where a statute is "vague and unspecific" or written in the alternative, courts apply a modified version of the *Blockburger* test, *State v. Gutierrez*, 2011-NMSC-024, ¶¶ 58-59, 150 N.M. 232, 258 P.3d 1024, and look to the state's legal theory as the basis for establishing the comparable provisions of each conviction. *Luna*, 2018-NMCA-025, ¶ 10. Under this modified approach, a court may use the charging documents, jury instructions, and the state's closing argument to determine the state's legal theory. *Id.*

{11} In *Luna*, this court recently undertook a modified *Blockburger* analysis of the same statute at issue in this appeal.[1] In that aspect of our ruling directly applicable to

---

[1] The State filed its answer brief six days prior to our opinion in *Luna*. In its brief, the State argued that CDM requires proof of an element that CSPM does not, and that therefore Defendant's convictions for both do not violate double jeopardy. Because the State's argument fails under *Luna*, we decline to address it further. *See Luna*,

this appeal, we held that the CDM statute is "a quintessentially generic, multipurpose statute" warranting application of the modified *Blockburger* approach. *Id.* ¶ 14. Thus, here we look to the charging document, jury instructions, and the State's closing argument to determine whether the conduct giving rise to Defendant's CDM conviction is separately punishable or is subsumed by the CSPM conviction. *See id.* ¶ 13 (instructing that "we must look to the [s]tate's theory of the case to inform what particular conduct is alleged in that particular case" (internal quotation marks and citation omitted)).

**{12}** While the charging document's boilerplate language offers little assistance in our analysis of the State's legal theory in the case, the jury instructions are more informative, with most of the requirements for conviction overlapping. The CDM instruction submitted to the jury includes four elements:

1.    [D]efendant caused the victim to engage in sexual intercourse;

2.    This caused [Victim] to conduct herself in a manner injurious to the morals, health, or welfare of [Victim];

3.    [Victim] was under the age of 18;

4.    This happened in New Mexico on or about the 15th day of February, 2015.

*See* UJI 14-601 NMRA. The CSPM instruction also required that the jury find four elements:

1.    [D]efendant caused [Victim] to engage in sexual intercourse;

2.    [D]efendant used physical force or physical violence;

3.    [Victim] was at least 13 but less than 18 years old;

4.    This happened in New Mexico on or about the 15th day of February, 2015.

*See* UJI 14-956A NMRA. The State's closing argument is even more informative. The State described the encounter between Defendant and Victim and outlined the elements listed in the CSPM instruction, matching the relevant conduct with each element. When presenting its argument regarding the CDM charge, the State again outlined the elements listed in the instruction, but when matching the conduct to the elements, the State pointed to the same sexual intercourse that gave rise to the CSPM charge and used the same description of that encounter as evidence that Defendant caused Victim to act in a manner that was injurious to her health.

---

2018-NMCA-025, ¶ 17 (holding that "[w]hile it is true that the CDM statute requires proof of an additional element," that alone is insufficient to establish a basis for multiple convictions when no further proof in addition to that required to prove CDM is needed to attain conviction for the other offense).

**{13}** The record reflects that under the State's theory of the case, CDM requires no additional proof beyond that which was used to prove CSPM. The State relied on the same encounter and the same act of sexual intercourse as the basis for both convictions. In fact, according to the State's theory of prosecution, the second element of the CDM instruction required no more proof than the first element of that same instruction. The injurious conduct referred to in the second element of CDM is, according to the State's theory, the sexual intercourse that allegedly occurred between Defendant and Victim. According to the State's argument regarding the applicable jury instructions, CSPM required proof of all of the elements of CDM, and under that theory of prosecution CDM was therefore subsumed within the CSPM conviction. *See State v. Montoya*, 2011-NMCA-074, ¶ 42, 150 N.M. 415, 259 P.3d 820 (considering "whether each offense requires proof of an element that the other does not"). Because the jury could, and apparently did, convict Defendant of CDM based solely on the same evidence used to convict Defendant of CSPM, under *Luna* Defendant's CDM conviction violates double jeopardy. 2018-NMCA-025, ¶ 17.

**{14}** We reverse and remand so that the district court may vacate Defendant's CDM conviction. *See Swick*, 2012-NMSC-018, ¶ 31 (providing that remedy for double jeopardy violation is to vacate offending conviction); *see also* NMSA 1978, § 30-6-3 (1990) (identifying CDM as a fourth degree felony); § 30-9-11(E)(1) (identifying CSPM as a second degree felony). Because Defendant's CDM conviction must be vacated on double jeopardy grounds, we need not address Defendant's argument that the district court erred in its interpretation of the CDM statute.

## B.     Prosecutorial Misconduct

**{15}** Defendant next makes an unpreserved argument that the prosecutor in this case engaged in misconduct by blocking Defendant from calling witnesses, by vouching for Victim's credibility, and by "[i]ntroducing erroneous DNA evidence." We review this issue for fundamental error. *State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862.

**{16}** Defendant's representations of the record are largely inaccurate and fail to demonstrate prosecutorial misconduct. The State did not make any "effort to block the defense from calling witnesses[,]" but instead alerted the district court to Defendant's failure to comply with certain procedural requirements related to witness disclosure. *See* Rule 5-502(A)(3) NMRA (requiring that the defendant disclose a witness list within thirty days of arraignment). Defendant's argument that the prosecutor vouched for Victim's credibility "by arguing that lack of DNA and lack of injuries did not matter because [Victim] testified" is likewise not supported by the record. *See* NMSA 1978, § 30-9-15 (1975); *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 ("In prosecutions for criminal sexual penetration, the testimony of the victim need not be corroborated and lack of corroboration has no bearing on [the] weight to be given to the testimony." (alterations, internal quotation marks, and citation omitted)). Furthermore, Defendant's assertion that the DNA evidence was "erroneous" is not substantiated by any citations to the record or relevant legal authority. Defendant does not develop his

argument in any way, and fails to give any explanation for his characterization of that evidence as "erroneous." We therefore do not address it. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (declining to address undeveloped, unpreserved argument that the defendant failed to support with citation to authority). Defendant has not demonstrated that he was deprived of a fair trial and has not demonstrated fundamental error occurred.

## C.      Ineffective Assistance of Counsel

**{17}**    Defendant argues that his trial counsel provided ineffective assistance, stating that counsel failed to investigate potential witnesses, failed to communicate with Defendant, and failed to effectively cross-examine witnesses. The evidence necessary to decide the merit of these claims lies outside the record on appeal. *State v. Gilbert*, 1983-NMSC-083, ¶ 22, 100 N.M. 392, 671 P.2d 640 ("This Court cannot review matters outside the record."). "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. We therefore decline to remand for an evidentiary hearing on the issue of ineffective assistance of counsel. *See State v. Samora*, 2013-NMSC-038, ¶ 23, 307 P.3d 328 (stating that the Supreme Court's preference that ineffective assistance claims "be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions" (internal quotation marks and citation omitted)).

## D.      Sufficiency of the Evidence

**{18}**    Defendant argues that the evidence presented at trial was insufficient to support any of his convictions. Specifically, Defendant argues that: (1) the DNA analyst should not have been allowed to testify; (2) the sexual assault nurse examiner ("SANE") report constitutes "conclusive proof that [Victim] testified falsely[,]"; (3) the State failed to establish the events occurred in New Mexico; and (4)  the detective was not qualified to testify regarding whether Mrs. Bravo appeared intoxicated during her interview on the morning of the encounter. For the reasons that follow, none of these challenges warrant reversal.

**{19}**    Defendant's argument regarding the DNA evidence proffered in this case was unpreserved, lacks specificity, and contains no citations to relevant legal authority.[2] Due to the countless deficiencies in Defendant's argument, we do not address it. *See Guerra*, 2012-NMSC-014, ¶ 21 (acknowledging that appellate courts are under no obligation to review unclear or undeveloped arguments). Defendant's argument

---

2Defendant frames his argument as a challenge to whether the analyst should have been allowed to testify, but he then points to an article in *National Geographic* magazine to support his assertion that "[b]ecause there was enough DNA to determine it was male, testing could have excluded him as the donor," suggesting a challenge to the accuracy of the results rather than the qualifications of the witness. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be").

regarding the SANE report is unpersuasive because it is for the jury, not this court, to resolve conflicts in the evidence and determine the weight and credibility of the evidence. *State v. Sanchez*, 2000-NMSC-021, ¶ 32, 129 N.M. 284, 6 P.3d 486. Furthermore, "the jury [was] free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{20}** We find Defendant's argument that the State failed to establish the events occurred in New Mexico unpersuasive. The victim testified that the offense occurred in Defendant's house in Deming. This evidence was sufficient, taken in the light most favorable to the verdict, to establish the requisite jurisdiction. *See State v. Tooke*, 1970-NMCA-068, ¶¶ 7-8, 81 N.M. 618, 471 P.2d 188 (noting that the courts may take judicial notice of "boundaries of the state" and concluding that evidence that events took place in Bernalillo County was sufficient to satisfy jurisdictional requirement that events occurred in New Mexico), *overruled on other grounds by State v. Ruffins*, 1990-NMSC-035, 109 N.M. 668, 789 P.2d 616. As to Defendant's assertion that the detective was not qualified to testify regarding an appearance of intoxication, "it is well recognized that laymen are capable of assessing the effects of intoxication as a matter within their common knowledge and experience." *State v. Privett*, 1986-NMSC-025, ¶ 20, 104 N.M. 79, 717 P.2d 55; *State v. Neal*, 2008-NMCA-008, ¶ 27, 143 N.M. 341, 176 P.3d 330 (stating the "fact[-]finder could rely on common knowledge and experience to determine whether [the d]efendant was under the influence of alcohol").

## E.    Cumulative Error

**{21}** Defendant's argument regarding cumulative error is limited to a single conclusory sentence in his brief in chief, in which he makes no explanation as to how he was deprived of a fair trial or in what way the errors were prejudicial to his interests. *See State v. Huerta-Castro*, 2017-NMCA-026, ¶ 48, 390 P.3d 185 (stating cumulative error standard that reversal is required where "the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial" (internal quotation marks and citation omitted)). Defendant's argument on this issue is wholly undeveloped and we therefore will not address it. *See State v. Dickert*, 2012-NMCA-004, ¶ 46, 268 P.3d 515 (declining to address the defendant's inadequately developed argument); *Fuentes*, 2010-NMCA-027, ¶ 29 (acknowledging that this Court does not review undeveloped arguments).

## CONCLUSION

**{22}** We reverse and remand so that the district court may vacate Defendant's CDM conviction as well as one of his CSPM convictions. We affirm his remaining CSPM conviction.

**{23}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**